

1  Randy Soderstrom
2  8174 Las Vegas Bl., #109-504
   Las Vegas, Nevada 89123
3  Randyslaw1@gmail.com
   714-728-5109
4  (in propria persona)

5          UNITED STATES DISTRICT COURT

6          CENTRAL DISTRICT OF CALIFORNIA

7              SOUTHERN DIVISION

Free Paid
N/s

8

9

10  RANDY SODERSTROM, a person; LEGAL        Case No.: _____
11  INSIGHTS, a non-profit organization
            Plaintiffs,                       SACV 19-422-JVS (KESx)

12  vs.                                       COMPLAINT FOR DAMAGES AND
                                              INJUNCTIVE RELIEF FOR
13                                            VIOLATIONS OF THE RACKETEER
14  TRINIDAD PAEZ OCAMPO, Deputy Trial        INFLUENCED AND CORRUPT
    Counsel OTC; THE STATE BAR OF             ORGANIZATIONS ACT; CIVIL RIGHTS
15  CALIFORNIA, OFFICE OF CHIEF TRIAL         ACT AND SUPPLEMENTAL CLAIMS
16  COUNSEL OTC, a public corporation;
    MELANIE J. LAWRENCE, Chief Trial
17  Counsel OTC; RIZMARI SITTON, Assistant    JURY TRIAL DEMANDED
18  Chief Trial Counsel OTC; ROBERT
    MAYSON, Administrative Supervisor OTC;
19  ELIZABETH STINE, Supervising Attorney
20  OTC; ROSS VISELMAN, Senior Trial Counsel
    OTC; MICHAEL CHAVEZ, State Bar
21  Investigator OTC; ENRIQUE ZUNIGA, State
22  Bar Investigator OTC; BREANA FRANKEL,
    attorney, and DOES 1-100,
23            Defendants

24

25

26

27

28

# TABLE OF CONTENTS

                                                                              **PAGE**

I.    INTRODUCTION..........................................................................................1

II.   NATURE OF THE CASE..............................................................................1

III.  JURISDICTION AND VENUE......................................................................4

IV.   PARTIES.....................................................................................................5

      A.    Plaintiffs...........................................................................................5

      B.    Defendants........................................................................................6

V.    RELATED PARTIES....................................................................................8

VI.   RELATED CASES.........................................................................................9

VII.  SUBSTANTIVE FACTUAL ALLEGATIONS...........................................10

      A.    Legal Insights, Inc. ........................................................................10

      B.    Kavita Sadana, Rudolph Nunnally, and the California State Bar.............11

      C.    Legal Insights and the Cease and Desist........................................14

      D.    Breana Frankel and the Anthony Smith...........................................15

      E.    Frankel, the Anthony Smith Complaint, and the Office of
            Chief Trial Counsel........................................................................16

      F.    The Ex Parte Proceedings...............................................................20

      G.    The State Bars' Actions Post-Hearing and the Results Thereof.................25

      H.    Frankel's Recantation and the Bar's Reaction................................33

      I.    Defendant Ocampo's January 8, 2019 Phone Call to Plaintiff.................38

      J.    Current Events.................................................................................39

[i]

## TABLE OF CONTENTS (CONTINUED)

**PAGE**

**VIII.** **CLAIMS FOR RELIEF**..........................................................................**44**

**FIRST CLAIM FOR RELIEF**

Violations of Federal Civil RICO—Unlawful Conduct of an Enterprise,
18 U.S.C. § 1962(c) (Defendants Ocampo, Chavez, Zuniga, Viselman,
Mayson, Frankel)..........................................................................**44**

**SECOND CLAIM FOR RELIEF**

Violations of Federal Civil RICO—Taking Control of an Enterprise,
18 U.S.C. § 1962(b)(Defendants Ocampo, Chavez, Zuniga, Viselman, Mayson,
Frankel)..........................................................................**59**

**THIRD CLAIM FOR RELIEF**

Violations of Federal Civil RICO—Conspiracy to Violate RICO,
18 U.S.C. § 1961(1), 18 U.S.C. § 1962(d)(Defendants Ocampo, Chavez,
Zuniga, Viselman, Mayson, Frankel)..........................................................................**61**

**FOURTH CLAIM FOR RELIEF**

Extortion, Cal. Penal Code §§ 519, 523 (Defendants Ocampo,
Chavez, Viselman)..........................................................................**63**

**FIFTH CLAIM FOR RELIEF**

Extrinsic Fraud, Bennett v. Hibernia Bank, (1956) 47 Cal.2d 540, 558;
F.R.C.P. Rule 65 (Defendants Ocampo, Chavez, Zuniga, Viselman, Frankel)........**66**

**SIXTH CLAIM FOR RELIEF**

Fraudulent Concealment, Intentional Misrepresentation / Falsifying Evidence /
Obstruction of Justice, Cal. Civil Code § 1710(3); Cal. Civil Code § 1710;
Cal. Penal Code §§ 132, 134, 141, 148 (Defendants Ocampo, Chavez,
Zuniga, Frankel, Viselman, Mayson)..........................................................................**67**

[ii]

## TABLE OF CONTENTS (CONTINUED)

PAGE

**SEVENTH CLAIM FOR RELIEF**

**Interference with Existing Contract and Existing Business Relations
(*Pacific Gas & Electric Co. v. Bear Stearns & Co.* (1990) 50 Cal.3d 1118, 1126)
(Defendants Ocampo, Chavez, Zuniga, Viselman, Mayson, Frankel)..................69**

**EIGHTH CLAIM FOR RELIEF**

**Interference with Prospective Contractual and Business Relations
(*PMC, Inc. v. Saban Entertainment, Inc.* (1996) 45 Cal.App.4th 579, 601;
*Diaz v. Gates*, 420 F.3d 897, 898-900 (9th Cir. 2005)(en banc))
(Defendants Ocampo, Chavez, Zuniga, Viselman, Mayson, Frankel)....................70**

**NINTH CLAIM FOR RELIEF**

**Unfair Business Practices, California Business & Professions Code §17200,
et seq. (Defendants Ocampo, Chavez, Zuniga, Viselman, Mayson, Frankel)..........71**

**TENTH CLAIM FOR RELIEF**

**Right to Be Secure From Unreasonable Search and Seizures 42 U.S.C. §1983 –
Fourth Amendment; Art. 1, §13, California Constitution (Defendants Ocampo,
Chavez, Zuniga, Frankel)..............................................................72**

**ELEVENTH CLAIM FOR RELIEF**

**Violations of Federal Civil Rights Act—Racial Discrimination-42 U.S.C. §§
1981, 1983; Fourteenth Amendment (Defendant Ocampo in her official
capacity)............................................................................76**

**TWELFTH CLAIM FOR RELIEF**

**Race Discrimination and Intentional Race Discrimination in Federal and State
Funded Programs, Violation of Title VI of the Civil Rights Act of 1964 and
28 C.F.R. §§ 42.101 et seq.; Cal. Government Code § 11135 et seq.; Cal.
Business & Professions Code § 125.6; 42 U.S.C. § 1983(Defendant Ocampo
in her official capacity)..............................................................77**

[iii]

## TABLE OF CONTENTS (CONTINUED)

**PAGE**

**THIRTEENTH CLAIM FOR RELIEF**

**Respondeat Superior / Vicarious Responsibility (*Lisa M. v. Henry Mayo Newhall
Memorial Hospital* (1995) 12 Cal.4th 291, 296–297 (Defendant California
State Bar, Office of Chief Trial Counsel; Defendants Lawrence, Sitton,
Stine)**....................................................................................................78

**FOURTEENTH  CLAIM FOR RELIEF**

**Injunctive Relief Civ. Code §§3420, 3422; F.R.C.P., Rule 65**.............................80

IX.    **PRAYER FOR RELIEF**...........................................................................84

X.    **DECLARATION OF SERVICE**..........................................................85

[iv]

1  
2  
3  
4  

Randy Soderstrom  
8174 Las Vegas Bl., #109-504  
Las Vegas, Nevada 89123  
Randyslaw1@gmail.com  
714-728-5109  
(in propria persona)  

5  

**UNITED STATES DISTRICT COURT**

6  

**CENTRAL DISTRICT OF CALIFORNIA**

7  

**SOUTHERN DIVISION**

8  
9  

10  
11  

RANDY SODERSTROM, a person; LEGAL INSIGHTS, a non-profit organization  
            Plaintiffs,  

12  

vs.

13  
14  
15  
16  
17  
18  
19  
20  
21  
22  
23  

TRINIDAD PAEZ OCAMPO, Deputy Trial Counsel OTC; THE STATE BAR OF CALIFORNIA, OFFICE OF CHIEF TRIAL COUNSEL OTC, a public corporation; MELANIE J. LAWRENCE, Chief Trial Counsel OTC; RIZMARI SITTON, Assistant Chief Trial Counsel OTC; ROBERT MAYSON, Administrative Supervisor OTC; ELIZABETH STINE, Supervising Attorney OTC; ROSS VISELMAN, Senior Trial Counsel OTC; MICHAEL CHAVEZ, State Bar Investigator OTC; ENRIQUE ZUNIGA, State Bar Investigator OTC; BREANA FRANKEL, attorney, and DOES 1-100,  
            Defendants  

Case No.: _____

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR VIOLATIONS OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT; CIVIL RIGHTS ACT AND SUPPLEMENTAL CLAIMS**

**JURY TRIAL DEMANDED**

24  
25  
26  
27  
28

## I.    **INTRODUCTION**

1.    Plaintiffs bring this civil action to rectify Defendants' violations of the federal Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1964 ("RICO"), the federal Civil Rights Act, and supplemental claims concerning violations of California State Law. Defendants are advancing a scheme to defraud all Plaintiffs of both money and property and in some cases, Plaintiff Soderstrom's Civil Rights.

## II.    **NATURE OF THE CASE**

2.    Defendants Melanie Lawrence, Rizmari Sitton, Elizabeth Stine, Trinidad Ocampo, Ross Viselman, Michael Chavez, Enrique Zuniga, Robert Mayson, and Breana Frankel have violated RICO and multiple state laws concerning business, existing contractual relationships and prospective business relationships.

3.    Defendants Melanie Lawrence, Rizmari Sitton, Elizabeth Stine, Trinidad Ocampo, Ross Viselman, Michael Chavez, Robert Mayson and Breana Frankel have violated Plaintiff Soderstrom's civil rights.

4.    Defendants Melanie Lawrence, Elizabeth Stine, Trinidad Ocampo, Ross Viselman, Michael Chavez, Enrique Zuniga, Robert Mayson who are employees of the California State Bar, Office of Chief Trial Counsel ("BAR/OTC"), took control of the Office of Chief Trial Counsel and committed multiple acts of mail fraud, wire fraud, extortion and other criminal acts in furtherance of their scheme to acquire control of Legal Insights (LIC).

5.    Defendants used their positions within the BAR/OTC to pressure a member attorney, Kavita Sadana, to acquiesce to stipulations that were known to be false, and later,

pressured member attorney (Defendant) Breana Frankel, to sign a declaration that was known to be false, in an effort to persuade the California Superior Court to grant them an injunction through extrinsic fraud to assume control of Legal Insights ("LIC"), a non-profit organization which Plaintiff had helped found, and of which he was the Director.

6.      Once these Defendants had assumed control of LIC by obtaining an injunction through extrinsic fraud, mail fraud, wire fraud, extortion and other illegal means, they used their control and influence at both the BAR/OTC and LIC to commit numerous acts in violation of racketeering laws including, but not limited to, mail fraud, wire fraud, unfair business practices, illegal search and seizure and other crimes to deprive Plaintiffs of money, property and future contractual prospects.

7.      Defendants, by not recognizing a distinction between Legal Insights, an entity, and Plaintiff Soderstrom, an individual, falsely informed the court that Soderstrom was "dba" as Legal Insights, thereby denying him his right to due process as a person, when, in fact, Legal Insights was a registered 501(c)(3) non-profit corporation and Soderstrom was an employee of Legal Insights only. Defendants knew this to be the case and as a result of their fraud upon the court stating otherwise, violated Plaintiff Soderstrom's civil rights by violating his right against illegal search and seizure and other acts.

8.      In addition to these egregious acts occasioned by the Defendants collectively, Defendant Ocampo went a step further and violated Plaintiff Soderstrom's civil rights and violated his prospective contractual relationships by denying him the ability to apply for grant funding on behalf of Plaintiff Legal Insights from the BAR/OTC and their affiliates, based on

what she described as his alleged support for President Trump and her belief that he was a "white supremacist."

### III.   **JURISDICTION AND VENUE**

9.     This action arises under 18 U.S.C. § 1964, with supplemental state claims for extrinsic fraud, civil conspiracy, perjury, intentional/fraudulent concealment, illegal search and seizure, intentional interference with contract and interference with prospective business relations, malicious prosecution, abuse of process, intentional infliction of emotional and physical distress, negligence, respondeat superior, falsifying evidence and extortion.

10.     This Court possess jurisdiction under 18 U.S.C. 1964(a) ("equity") and (c) ("damages"), 28 U.S.C. § 1331 ("federal question"), 28 U.S.C. § 1337 ("regulation of commerce"), 28 U.S.C. § 1343; 42 U.S.C. §§ 1981, 1983, 1985  ("civil rights")  and under the principles of Supplemental Jurisdiction pursuant to 28 U.S.C. § 1367. Declatory relief is authorized under 28 U.S.C. §§ 2201 and 2202. Plaintiffs' claims also present several federal questions.

11.     Venue is proper in this District, and this Court has personal jurisdiction over the defendants pursuant to 18 U.S.C. §1965(a) and 28 U.S.C. § 1391(b), as the Defendants are citizens of, are residents of, are found within, have agents within, are doing business in and transact their affairs within this District. Many of the events that give rise to these Claims occurred within this District.

12.     This lawsuit should be assigned to the Southern Division (Santa Ana), of this Court because significant events which give rise to this lawsuit occurred within the County of

**COMPLAINT FOR RICO DAMAGES AND INJUNCTIVE RELIEF**
**PAGE 4 OF 85**

Orange, Plaintiffs reside within the County of Orange and at least one Defendant resides within

Orange County. (28 U.S.C. § 84(c)(3); 28 U.S.C. § 1391(b)(2)).

## IV.  **PARTIES**

### A.    **Plaintiffs**

13.    RANDY SODERSTROM is a 51-year old resident of Orange County, California.

Mr. Soderstrom was a founding member of Legal Insights ("LIC"), a non-profit organization

founded in 2013.  LIC provides post-conviction assistance to incarcerated prisoners nationwide

by providing reviews of their convictions and assistance with preparation of any necessary pro se

petitions such as habeas corpus petitions, all of which is done under the supervision of attorneys.

Mr. Soderstrom, who was incarcerated at one time himself, became familiar with post-conviction

practice and procedure and having seen the injustices within the system firsthand, dedicated his

life to assisting those who otherwise were unable to help themselves. These people include the

actually innocent, those who were given illegal sentences, incarcerated veterans and women and

others. Together with other likeminded individuals, Legal Insights was founded in November

2013 and upon hiring supervising attorneys in October 2014, Legal Insights began taking on

clients.

14.    LEGAL INSIGHTS, Inc. ("LIC") is a non-profit organization that provides post-

conviction assistance to prisoners nationwide with reviews of their convictions and the

preparation of any necessary post-conviction pleadings for their submission to the courts in pro

se. All work is done either by licensed attorneys or under the supervision of licensed attorneys.

Plaintiff was the director for Legal Insights from 2013 until the present.

**COMPLAINT FOR RICO DAMAGES AND INJUNCTIVE RELIEF**
**PAGE 5 OF 85**

**B.**    **Defendants**

15.    TRINIDAD OCAMPO is a resident of Los Angeles County, California and is deputy trial counsel for the Unauthorized Practice of Law Unit for the California State Bar, Office of Chief Trial Counsel. Defendant Ocampo was the attorney who directed all actions concerning Plaintiffs case before the BAR/OTC and the Orange County Superior Court. Defendant is sued in her personal capacity for all claims except for the civil rights violations, where she is sued in her in her official capacity.

16.    MICHAEL CHAVEZ is a resident of Los Angeles County, California and is an investigator with the Unauthorized Practice of Law Unit for the California State Bar, Office of Chief Trial Counsel. Defendant Chavez reported directly to Defendant Ocampo concerning all actions performed on Plaintiff's case before the BAR/OTC and the Superior Court. Defendant is sued in his personal capacity except for the civil rights violations where he is sued in his official capacity.

17.    ENRIQUE ZUNIGA is a resident of Los Angeles County, California and is an investigator with the Unauthorized Practice of Law Unit for the California State Bar, Office of Chief Trial Counsel. Defendant Zuniga reported directly to Defendant Ocampo concerning all actions performed on Plaintiff's case before the BAR/OTC and the Superior Court. Defendant is sued in his personal capacity except for the civil rights violations where he is sued in his official capacity.

18.    ROBERT MAYSON is a resident of Los Angeles County, California and is an Administrative Supervisor for the California State Br, Office of Chief Trial Counsel. Defendant

Mayson reported directly to Defendants Ocampo and Stine concerning all matters related to Plaintiff. Defendant is sued in his personal capacity.

19.    ELIZABETH STINE is a resident of Los Angeles County, California, and is a supervising attorney for the California State Bar, Office of Chief Trial Counsel. Defendant Stine directly supervised all work performed on Plaintiff's matter that was conducted by Defendants Ocampo, Chavez and Mayson. Defendant is sued in her personal capacity except for the civil rights violations where he is sued in his official capacity.

20.    ROSS VISELMAN is a resident of Los Angeles County, California and is senior trial counsel for the California State Bar, Office of Chief Trial Counsel. Defendant Viselman worked on Plaintiff's matter with Defendant Ocampo as well as initiated disciplinary charges against Defendant Breana Frankel. Defendant is sued in his personal capacity.

21.    RIZMARI SITTON, is a resident of Los Angeles County, California and is the Assistant Chief Trial Counsel for the California State Bar, Office of Chief Trial Counsel. Defendant Sitton directly supervised and approved all work performed on Plaintiff's matter and Defendant Frankel's matter by Defendants Massey, Viselman, Ocampo and Stine. Defendant is sued in her personal capacity except for the civil rights violations where he is sued in his official capacity.

22.    MELANIE J. LAWRENCE is a resident of Los Angeles County, California and is the Chief Trial Counsel for the California State Bar, Office of Chief Trial Counsel. Defendant Lawrence directly supervised and approved all decisions made by Defendants Sitton, Massey, Viselman, Ocampo and Stine concerning Plaintiff and Defendant Frankel. Defendant is sued in

her personal capacity except for the civil rights violations where he is sued in his official capacity.

23.    BREANA FRANKEL is a resident of Orange County, California and is an attorney licensed to practice in the State of California. Defendant is sued in her personal capacity.

24.    CALIFORNIA STATE BAR, OFFICE OF CHIEF TRIAL COUNSEL, is a public corporation registered in the State of California

## V.    **RELATED PARTIES**

25.    KAVITA SADANA is an attorney licensed to practice law in the State of California. She was staff counsel and supervising counsel for Legal Insights (LIC) from May 5, 2015 until December 16, 2016.

26.    ANTHONY SMITH was a former client of Legal Insights. Smith is incarcerated in a California State prison for burglary, sexual assault and other charges. He is serving a sentence of Life plus 20-years.

27.    TARA SMITH is the spouse of Anthony Smith and was Anthony's sponsor.

28.    RUDOLPH NUNNALLY was a former client of Legal Insights. Nunnally is incarcerated in a Georgia State prison for aggravated assault of a child and other related charges. He is serving a sentence of 40-years.

29.    ABRAHIM BAGHERI is a resident of Los Angeles County, California and is a deputy trial attorney for the California State Bar, Office of Chief Trial Counsel. Bagheri was recently assigned to the matter of Plaintiff, replacing Trinidad Ocampo.

30.    LEAH T. WILSON is a resident of Los Angeles County, California and is
Executive Director of the California State Bar including the Office of Chief Trial Counsel..

31.    JOHN T. KELLEY is a resident of Los Angeles County, California and is
Assistant Chief Trial Counsel for the California State Bar, Office of Chief Trial Counsel. Kelley
reports directly to Defendant Lawrence.

32.    DAG MACLEOD is a resident of Los Angeles County, California and is Chief of
Mission Advancement and Accountability for the California State Bar and the Office of Chief
Trial Counsel.

33.    STEVE MAZER is a resident of Los Angeles County, California and is the Chief
Administrative Officer for the California State Bar, Office of Chief Trial Counsel. Defendant
Mayson normally reports directly to Mazer.

34.    DREW MASSEY is a resident of Los Angeles County, California and is a
supervising attorney for the California State Bar, Office of Chief Trial Counsel. Massey
supervised and approved all work performed by Defendant Viselman relating to Plaintiff's
matter and Defendant Frankel's matter. Defendant is sued in his personal capacity.

## VI.    **RELATED CASES**

35.    *In re: Randy Soderstrom*, Case no. 30-2018-00998872-CU-PT-CJC, is a related
case pending in the Orange County Superior Court. This was filed by the California State Bar,
Office of Chief Trial Counsel, as an Ex Parte Application to Assume Jurisdiction over the
Unlawful Law Practice of Randy Soderstrom on June 15, 2018, and is ongoing. The Matter was

originally filed by Defendant Ocampo bur has been transferred to deputy trial counsel Abraham Bagheri.[1]

36.    *In re: Breana S. Frankel,* Case No. 18-O-10487, is a related case pending in the California State Bar Court, Hearing Dep't. Los Angeles. This was filed by the California State Bar, Office of Chief Trial Counsel, as a Notice of Disciplinary Charges against Breana Frankel. The case was filed by senior trial counsel Ross Viselman.

## VII.    SUBSTANTIVE FACTUAL ALLEGATIONS

### A.    Legal Insights, Inc.

37.    Plaintiff Legal Insights ("LIC") was formed on November 26, 2013, as a non-profit organization in the State of California.

38.    LIC's mission statement was to provide incarcerated prisoners with post-conviction assistance by performing reviews of their convictions and assistance with the preparation of any necessary pos-conviction pleadings such as habeas corpus petitions, for the inmate's presentation to the state/federal courts in pro se. All work performed was done so either by attorneys or under the supervision of attorneys.

_____

[1] The State Bar, Office of Chief Trial Counsel has incorrectly titled the pleadings filed in the Orange County Superior Court as "Randy Soderstrom dba Legal Insights" when, in fact, Legal Insights is a corporation and Soderstrom is an individual employed by Legal Insights. At no time did Soderstrom ever operate as a dba.

**COMPLAINT FOR RICO DAMAGES AND INJUNCTIVE RELIEF**
**PAGE 10 OF 85**

39.    LIC's board of directors appointed a board of directors including Plaintiff Randy Soderstrom, who was also hired as the Director.

40.    On October 29, 2014 LIC hired Attorney Elizabeth A Bumer - Bar #137747, as staff counsel in charge of supervising all work performed for clients of LIC. Elizabeth resigned from LIC on March 20, 2015 for personal reasons. Elizabeth continued to supervise LIC's cases as a volunteer until April 18, 2015.

41.    On April 18, 2015 LIC hired Amanda Massimini – Bar #302050, as supervising counsel for LIC clients until she resigned on June 12, 2015 as she was offered a full time position with the Sacramento County Public Defender's Office, where she remains employed as a deputy public defender.

**B.    Kavita Sadana, Rudolph Nunnally and the California State Bar**

42.    On May 5, 2015 LIC employed Attorney Kavita Sadana as an additional supervising attorney.

43.    On June 12, 2015, with the resignation of Amanda Massimini, Kavita Sadana assumed the duties of senior supervising counsel for LIC.

44.    On August 27, 2015, Rudolph Nunally, a prisoner serving a sentence for child abuse, contacted LIC and wanted information about the services LIC offered.

45.    On September 17, 2015, Plaintiff Soderstrom met with Attorney Kavita Sadana, and discussed the case at which time Sadana approved the case as a potential client and she

furthermore approved the $4000 fee to be charged for the Evaluation. She authorized Plaintiff Soderstrom to speak with Nunally and his family regarding the Contract and fee.

46.     On September 21, 2015, Rudolph Nunnally hired LIC to review his conviction and see if any potential errors for post-conviction relief existed.

47.     From September 2015 until October 2016, LIC worked on Nunally's post-conviction case under the supervision of Kavita Sadana.

48.     On October 29, 2016, Kavita Sadana approved the Evaluation for Rudolph Nunally and a copy was mailed to him.

49.     In November 2016, unhappy with the results of his evaluation, Nunally demanded his money back and his request was denied by Kavita Sadana as all work had been completed.

50.     In November 2016 , Nunally filed a complaint with the California State Bar, alleging that "no services of any value" were performed.

51.     In November 2016, the California State Bar served Kavita Sadana with a complaint concerning LIC client Rudolph Nunnally, alleging that no work was performed on his behalf.

52.     In November 2016 Sadana replied with documentary evidence that all work had been performed for the client.

53.     In November 2016 California State Bar investigator Sheri Gordon notified Sadana that the Bar believed she was aiding Plaintiffs Soderstrom and LIC in the unauthorized practice of law and submitted more questions for her to answer.

**COMPLAINT FOR RICO DAMAGES AND INJUNCTIVE RELIEF**
**PAGE 12 OF 85**

54.     In November 2016 LIC retained attorney Anthony Radogna to represent Kavita Sadana in the State Bar proceedings.

55.     In November of 2016 Sadana told Plaintiff Soderstrom that she had done nothing wrong and he offered to report the matter to LIC's insurance carrier to seek representation should the matter go to trial at the State Bar Court.[2]

56.     In December 2016 State Bar UPL Unit investigator Michael Chavez ("Defendant Chavez"), at the bequest of Defendant Elizabeth Stein and an unknown attorney with the BAR/OTC, informed Sadana that they believed Sadana was aiding LIC and Plaintiff Soderstrom in the Unauthorized Practice of Law as she was "not part of the intake process." The Bar stated that they would file disciplinary charges against her unless she stipulated to the UPL allegations and resigned from LIC.

57.     On December 16, 2016, Sadana resigned from LIC.

58.     On February 16, 2017, the State Bar offered to close Kavita's complaint with a "warning letter" or she could challenge their findings in State Bar Court.

59.     On February 16, 2017 Sadana agreed to the State Bars stipulation despite her being innocent of the charges. She stated that "[Defendant] Chavez threatened to take my license and I need my license."

_____

[2] Radogna was hired out-of-pocket by LIC for the limited purpose of handling the State Bar complaint at the initial stages. Legal Insights carried a separate $1,000,000 claims policy with Lloyds of London/CIMA which included coverage for claims and coverage for legal representation of attorneys and employees of LIC.

**COMPLAINT FOR RICO DAMAGES AND INJUNCTIVE RELIEF**
**PAGE 13 OF 85**

## C.    Legal Insights and the Cease and Desist

60.    On February 16, 2017 Defendant Chavez expanded the scope of the investigation to include an inquiry into why LIC was not "owned" by a California licensed attorney. Chavez then filed a UPL complaint against LIC and Plaintiff Soderstrom alleging that both were engaged in the Unauthorized Practice of Law.

61.    On or about February 16, 2017 LIC retained Anthony Radogna to represent LIC in this new UPL complaint filed against LIC.

62.    In February 2017, Radogna advised the Bar that LIC was a non-profit organization, not a law firm, and as such it was not legally able to be "owned" by anyone. He explained that Plaintiff Soderstrom did not "own" LIC, but was the director hired by the organization to run the day to day operations and Kavita Sadana was hired by LIC to supervise all work performed by non-attorneys.

63.    On or about March 8, 2017, the BAR/OTC issued a cease and desist order that stated in pertinent part:

> "Please be advised that our investigation revealed that [Plaintiff] appears to be acting outside the scope of attorney supervision. [Plaintiff's] initial case evaluation and negotiation of legal fees are acts which constitute the practice of law. Consequently, [Plaintiff's] conduct violates Business and Professions Code section 6125."

64.    On March 28, 2017, Defendant Frankel met with Plaintiff Soderstrom and implemented changes to LIC's policies to ensure compliance with the BAR/OTC's cease and desist order, specifically:

**COMPLAINT FOR RICO DAMAGES AND INJUNCTIVE RELIEF**
**PAGE 14 OF 85**

"[i]ntake process, client notes, initial client reviews, correspondence to clients …".

**D.     Breana Frankel and the Anthony Smith Case**

65.     On October 3, 2016 Tara Smith contacted LIC regarding her husband, Anthony Smith. Plaintiff Soderstrom met with Kavita Sadana and discussed the case, fees, etc., which she approved.

66.     On October 17, 2016, LIC hired an additional attorney, Breana Frankel ("Defendant Frankel"), #215894, to supervise additional cases as Legal Insights caseload was increasing.

67.     On October 24, 2016 Tara Smith hired LIC to perform an Evaluation (PCCE) and any necessary state habeas corpus petitions.

68.     On November 14, 2016, Defendant Frankel signed and mailed a letter to Anthony Smith in which she stated:

> "I am Staff Counsel for Legal Insights and all work performed is supervised by
> myself and/or other attorneys at all times. All Post-Conviction Case Evaluations
> ("PCCE"), habeas corpus pleadings and all other research or work performed by
> Legal Insights is approved by myself or another licensed attorney before it leaves
> the office."

69.     Defendant Frankel met with Plaintiff Soderstrom and LIC staff regarding Anthony Smith's case on 10-24-16, 11-09-16, 11-14-16, 11-23-16, 12-14-16, 01-10-17, 02-15-17, 03-28-17, 05-05-17 and 05-19-2017.

70.     On March 28, 2017, Defendant Frankel met with Plaintiff Soderstrom and
implemented changes to LIC's policies to ensure compliance with the State Bar's cease and
desist order, specifically: "[i]ntake process, client notes, initial client reviews, correspondence to
clients …".

71.     On May 19, 2017 Defendant Frankel approved and signed the Final Draft
Evaluation and Petition for Anthony Smith and approved it for submission to the client.

72.     On June 3, 2017, Defendant Frankel resigned from LIC.


**E.      Frankel, the Anthony Smith Complaint, and the Office of Chief
          Trial Counsel**

73.     On July 6, 2017  LIC hired Christina Coley as staff and supervising counsel.

74.     On July 18, 2017, Christina Coley re-reviewed the Smith Draft, approved it a
second time, and LIC mailed the completed copy to Anthony Smith.

75.     On July 20, 2017 Tara and Anthony Smith, unhappy with the results, requested a
refund from Legal Insights, which was denied as the work was completed. [3]

---

[3] Anthony Smith was unhappy with the results of his Evaluation as Legal Insights concluded that after two separate
tests were performed on DNA recovered from the sexual assault, both results conclusively determined that he *was*
the contributor to the DNA as his co-defendant and the victim's husband were excluded as they were a completely
different blood type.

**COMPLAINT FOR RICO DAMAGES AND INJUNCTIVE RELIEF**
**PAGE 16 OF 85**

76.    On July 24, 2017 Tara Smith sent former counsel Defendant Frankel an email to her personal email requesting a refund. Defendant Frankel replied that she no longer worked for Legal Insights and had to contact the director, Plaintiff Randy Soderstrom.

77.    In March 2018, Tara Smith filed a complaint with the State Bar against Defendant Frankel.

78.    On March 6, 2018 Sheri Carter, an Investigator for the California State Bar, contacted Defendant Frankel, whom the Smith's stated in their complaint was the "supervising attorney" for LIC when LIC was working on Anthony Smith's case, and requested she respond to the allegations:

> "On October 24, 2016, Mr. and Mrs. Smith hired Legal Insights Inc. (LII), a non-profit organization, to file a post-conviction petition, including a writ of habeas corpus, for Mr. Smith who was incarcerated. On November 14, 2016, Mr. Smith received a letter from you on behalf of LII stating that you were a staff attorney for LII and would be supervising all work performed by LII with respect to Mr. Smith's post-conviction filings. …. Mr. and Mrs. Smith allege that you and LII failed to perform and complete the services that were contracted and they fired LII on July 20, 2017 and requested a refund of the $9,000 in fees paid to LIL On July 21, 2017, Mrs. Smith mailed a certified letter to your address listed on the State Bar website regarding this matter and you responded stating that you had resigned from LII sometime in June 2017 and could not assist Mr. and Mrs. Smith with their dispute with LII."

79.     Defendant Frankel responded to Carter on March 18, 2018. She adamantly denied any involvement with the Smith case and denied having supervised the Smith case in any capacity.[4]

80.     On May 8, 2018, Defendant Chavez, investigator with the BAR/OTC's Unauthorized Practice of Law Unit, sent Plaintiff Legal Insights and Plaintiff Soderstrom a revised Complaint regarding Anthony and Tara Smith, since Breana Frankel had denied any involvement with the Smith case, thereby prompting the UPL Unit to open a separate investigation. The Complaint stated in pertinent part:

> "The Complainants were under the understanding that attorney Breanna Frankel was supervising the work performed on their behalf. However, Ms. Frankel denied any involvement with the Complainant's matter and claims that Mr. Soderstrom was acting without any attorney supervision."

81.     The BAR/OTC began planning to file an Ex Parte Application to assume jurisdiction over what was alleged to be Randy Soderstrom's unauthorized law practice.

82.     On May 22, 2018 Defendant Chavez, at the direction of Defendants Stein and Ocampo, emailed Defendant Frankel and told her that:

> "[L]egal Insights was cheating consumers and that it needed to be closed to protect the public."

---

[4] Based on Frankel's denials, the State Bar transferred the case to the Unauthorized Practice of Law Unit (UPL.

**COMPLAINT FOR RICO DAMAGES AND INJUNCTIVE RELIEF**
**PAGE 18 OF 85**

83.     On or about June 6, 2018 Defendant Chavez then drafted, prepared and emailed Frankel a declaration, at the direction of Defendants Ocampo and Stein, which Chavez pressured Frankel to sign by promising that:

> "[t]he declaration would not be used against [her] …"

84.     On June 7, 2018 Defendant Frankel signed the declaration.[5]

85.     In her June 7, 2018 declaration, Breana Frankel stated:

> "I was hired by [LIC] in October 2016 to work one (1) day per week; primarily to expand [LIC]'s outreach to incarcerated veterans and women."

86.     In her June 7, 2018 declaration, Breana Frankel stated:

> "With regard to Mr. Smith's case, I believe that I reviewed Mr. Smith's criminal records when they finally arrived at LII. Aside from reviewing Mr. Smith's criminal records, I did not perform any work on behalf of Mr. Smith during the time I was employed at LII. By the time that I resigned from Lil in June 2017, Soderstrom had not provided me with anything to review regarding Mr. Smith's case."

87.     In her June 7, 2018 declaration, Breana Frankel stated:

> "In the last two (2) months of my employment, Soderstrom had not shared any case information with me."

_____

[5] Defendant Frankel would later admit, in a new declaration dated December 3, 2018, that she signed the June 7th declaration under duress, "[B]ecause an attorney is required to cooperate with State Bar investigations …. [I] believed at the time that I did not have any choice in the matter."

**COMPLAINT FOR RICO DAMAGES AND INJUNCTIVE RELIEF**
**PAGE 19 OF 85**

88.     In her June 7, 2018 declaration, Breana Frankel stated:

"Furthermore, based on *Whitmore v. Arkansas[6]* , I believed that Soderstrom
represented these clients, not that I represented them directly."

### F.     The Ex Parte Proceedings

89.     On June 13, 2018, the State Bar, Office of Trial Counsel, represented by
Defendant Trinidad Ocampo ("Defendant Ocampo"), filed an Ex Parte Application and Petition
and Verified Application for Assumption over the Unauthorized Law Practice of Randy
Soderstrom dba Legal Insights, Inc.; request for Injunction...". in the Superior Court for the
County of Orange. A date of June 14, 2018 was set for the hearing.

90.     On June 13, 2017, LIC retained Anthony Radogna to appear on LIC's behalf and
Plaintiff Soderstrom appeared in pro se to represent himself.

91.     On June 14, Plaintiff Soderstrom and Anthony Radogna appeared in the Orange
County Superior Court, before the Honorable Judge Moss, in Dept. C14.

92.     On June 14th, Defendant Ocampo handed the pleadings to Radogna and
Soderstrom literally 5 minutes before the hearing.

93.     Judge Moss, reset the hearing out until June 29, 2018 in order for Radogna and
Soderstrom to have an opportunity to respond to the claims.

---

[6] *Whitmore v. Arkansas*, 495 U.S. 149 (1990)

**COMPLAINT FOR RICO DAMAGES AND INJUNCTIVE RELIEF**
**PAGE 20 OF 85**

94.     On June 19, 2017 State Bar Investigator Shari Gordon sent Defendant Frankel more questions concerning her involvement with LIC and the Anthony Smith case.

95.     On June 29, 2017 Radogna and Soderstrom appeared before the Hon. Moss, for the Ex Parte hearing.

96.     On June 29, 2018, the Court held the Ex Parte Hearing.  In support of her argument that Plaintiff Soderstrom and LIC were acting without counsel and committing the unauthorized practice of law, Defendant Ocampo presented the Court with the June 7, 2018 declaration from Defendant Frankel in support of her oral argument.

97.     In her moving papers, Defendant Ocampo stated that:

"There is probable cause to believe Soderstrom is advertising or holding himself out as practicing or entitled to practice law in California, and is otherwise practicing law without authority. Soderstrom has misled his clients to believe that he is a licensed attorney entitled to practice law, and/or working with licensed attorneys, by agreeing to handle post-conviction matters on behalf of his clients and collected illegal fees for his unauthorized legal services."

98.     In her moving papers, Defendant Ocampo stated that:

"This ex parte application is based upon ... the original supporting declarations of Tara Smith, Breana Frankel, and Michael Chavez ..."

99.     In her moving papers, Defendant Ocampo stated that:

"[S]oderstrom was taking on clients and handling all the cases by himself, based on his interpretation of Supreme Court case Whitmore v. Arkansas, which established that a non-attorney "next friend" of an inmate may pursue a habeas

**COMPLAINT FOR RICO DAMAGES AND INJUNCTIVE RELIEF**
**PAGE 21 OF 85**

petition on behalf of the detained person. 459 U.S. 149. (See Declaration of Breana Frankel 4 hereafter "Frankel Decl." attached hereto.) "

100.    In her moving papers, Defendant Ocampo stated that:

"[a]s of June 2017, when LII's part-time attorney resigned from her position, LII's full-time staff consisted of Soderstrom and one non-attorney support staff. (Frankel Decl. 9). Moreover, Soderstrom maintained primary control of client files and information and was delegating and directing work to other staff as he saw appropriate. (Frankel Decl. 9). "

101.    In her moving papers, Defendant Ocampo stated that:

"As evidenced by the declarations of client Tara Smith, former Legal Insights Inc., staff attorney, Breana Frankel and State Bar of California Investigator, Michael Chavez, there is probable cause to believe that Soderstrom: (1) is not and never has been entitled to practice law in California, and he is not otherwise authorized pursuant to statute or court rule to practice law in this state at any time; (2) is holding himself out as entitled to practice law, or recently has held himself out as authorized to practice law, and is practicing, or has recently practiced law…" ). "

102.    In her oral argument before the court, Defendant Ocampo argued that Plaintiff Soderstrom was lying as the June 7, 2018 declaration signed by Defendant Frankel proved that Frankel neither supervised or approved any work done on the Smith case and Soderstrom had misrepresented to the Smith's that the work would be supervised by Frankel.

103.    Defendant Ocampo also produced a second declaration from Tara Smith in which she stated that she received a letter from Defendant Frankel stating that Frankel would be supervising the case, but it was her (Tara Smith's) understanding that Frankel "did not supervise the case."

**COMPLAINT FOR RICO DAMAGES AND INJUNCTIVE RELIEF**
**PAGE 22 OF 85**

104.    Defendant Ocampo also argued to the court and included in her pleadings that the OTC/Bar should be able to enter Plaintiff Soderstrom's residence and search for files related to LIC.

105.    Attorney Anthony Radogna, orally argued to the Court on June 29, 2017.

106.    Anthony Radogna argued to the court that Defendant Frankel was being untruthful in her June 7, 2018 declaration when she claimed she was not supervising work done at LIC and her specific statement in which she claimed to have NOT supervised any work for Anthony Smith and had NEVER signed off on anything concerning his case.

107.    Anthony Radogna attempted to enter documents into evidence such as Frankel's timesheets showing she worked 3-5 days a week, not 1 day a week, her employment contract reflecting that she was hired as supervising counsel for all clients, copies of work product showing she had, in fact, worked on and approved numerous client's cases and other materials in support of his argument, but the court refused to admit any items.

108.    Anthony Radogna argued to the court that Plaintiff Soderstrom had never held himself out to be an attorney, nor told anyone that he was an attorney.

109.    Anthony Radogna pointed out that none of the attachments to the Bar's pleadings supported their claim that Plaintiff Soderstrom had ever misled the public into believing he was an attorney or holding himself out to be one. In fact, the exhibits consisted of a copy of the Legal Insights and Facebook websites, both of which expressly stated that "Randy Soderstrom is not any attorney" and "All work performed by Legal Insights is done under the supervision of a licensed attorney."

**COMPLAINT FOR RICO DAMAGES AND INJUNCTIVE RELIEF**
**PAGE 23 OF 85**

110.    Anthony Radogna further argued that there was no evidence whatsoever that Plaintiff Soderstrom had any files in his residence and the OTC/Bar had produced no evidence to support their request for an order authorizing them entry into his residence.

111.    The Court asked Defendant Ocampo what evidence the OTC/Bar had to support their request to search Plaintiff Soderstrom's residence. She replied that they had evidence but she "left it at her office." She then argued that she "believed" that Soderstrom "might" have files in his garage.

112.    Before the judge ruled, Plaintiff Soderstrom requested that the court allow him to speak in his own defense and provide exhibits which he had brought with him in his own defense, a request that was denied by the court because, as the Judge stated, "You cannot represent the corporation as you are not an attorney."

113.    Plaintiff Soderstrom tried to explain that he was not trying to represent LIC as Anthony Radogna was appearing on behalf of the corporation, but the judge denied his request to speak because "the pleading show you as a DBA." Plaintiff Soderstrom attempted to argue that LIC was not a DBA, but the judge ordered him to remain silent.

114.    The Court ruled favorably for the BAR/OTC and granted the Bar their Ex Parte application in full with the exception that any search of Plaintiff Soderstrom's residence would be limited to his garage.

115.    The court's order expressly prohibited LIC from continuing its operations, and expressly prohibited Plaintiff Soderstrom from working in the legal industry as well.

**COMPLAINT FOR RICO DAMAGES AND INJUNCTIVE RELIEF**
**PAGE 24 OF 85**

116.    Plaintiff Soderstrom attempted to argue to the Judge that there was no evidence presented to support even a search of his garage or to prohibit him from personally working in the legal industry as a legal assistant, but the Judge again ordered Plaintiff Soderstrom to remain silent as he was "not an attorney" and his ruling was "final."

**G.     The State Bar's Actions Post-Hearing and the Results Thereof**

117.    Immediately following the hearing and based on the Court's Order, the OTC/Bar took the following action: Defendant Chavez and Defendant Zuniga assistant entered Defendant's residence located at 24536 Sunshine Dr., Laguna Niguel, Ca. 92677 on June 29, 2018, to search his "garage" area. After tearing apart Soderstrom's garage, *nothing was found or removed*. Defendant Chavez stated to Plaintiff that he would "be back anytime I want with or without a warrant" to search his residence.

118.    On June 29, 2018, immediately following the hearing and based on the Court's Order, the OTC/Bar took the following action: Defendants Ocampo, Chavez and Zuniga, entered the Offices of Legal Insights (LIC), located at 25401 Cabot Road, Suite 212, Laguna Hills, Ca. 92653, and seized approximately 680 client files, 24 legal boxes, additional records and other materials. Despite repeated requests, no list or inventory was provided to Soderstrom as to what was taken or their status and none has ever been provided to date.

119.    Based on the Court's Order, the OTC/Bar took the following action on or about July 2, 2018 : The OTC/Bar froze all U.S. Bank accounts in the name of Legal Insights and all

personal bank accounts in the name of Plaintiff Randy Soderstrom, and seized all related bank statements from said accounts.

120.     Based on the Court's Order, the OTC/Bar took the following action on or about July 2, 2018 : Defendant Chavez contacted the Human Rights Defense Center, Prison Legal News, where Plaintiffs had advertised their services since 2013, and Defendant Chavez told the HRDC of the injunction and sent by email a copy of the order requesting the HRDC stop allowing Plaintiffs to advertise in their publications. The HRDC advised Plaintiffs on or about August 15, 2018 that because of the injunction, they were no longer able to advertise LIC's services.

121.     On June 29, 2018, Plaintiff Soderstrom and all LIC employees vacated the Cabot Street Office as they were unable to pay the rent as the US Bank Accounts had been frozen and the office was effectively taken over by the OTC/Bar who, when asked by Plaintiff Soderstrom about paying bills and rent, was told by Defendant Ocampo that "You are shut down and we now control Legal Insights."

122.     On June 29, 2018, Plaintiff was unable to pay the balance of the Cox communications business account bill as the accounts were frozen.

123.     On and after June 29, 2018, Plaintiff was unable to pay multiple credit card bills as he was unable to draw a salary for personal bills as the business account was frozen and he was unable to pay for personal expenses as his personal account was frozen.

124.     On and after June 29, 2018 Plaintiff was unable to pay his mortgage and his home went into foreclosure proceedings in November-December 2018.

125.    On and after June 29, 2018, Plaintiff was unable to make his car payment and was threatened with repossession.

126.    On and after June 29, 2018, Plaintiff was unable to pay his personal electric bill, gas bill, trash collection bill, storage bill, water bill, home warranty bill, home and auto insurance bills, animal insurance bill and several other bills as all accounts were frozen and he was unemployed.

127.    On June 29th, 2018, Plaintiff Legal Insights defaulted on a loan from U.S. Bank Equipment's services as the company was no longer able to generate revenue and Defendant Ocampo expressly told Plaintiff Soderstrom that LIC was "out of business."

128.    Based on the Court's Order, the OTC/Bar took the following action: The State Bar on or about July 9, 2018 redirected LIC's Nevada phone numbers, to the BAR/OTC. The BAR/OTC disconnected the remaining telephone and internet connections associated with Plaintiff Soderstrom and LIC, including personal telephone lines and telephone lines located within the State of Nevada.

129.    On Jul 9, 2018, Defendant Frankel answered State Bar Investigator Sheri Gordon's additional questions which she requested from Frankel back on June 19, 2018. These answers even furthermore established that Defendant Frankel had made false statements to the BAR/OTC at Defendants request.

130.    Based on the Court's Order, the OTC/Bar took the following action: The State Bar filed a change of address notification with the U.S. Postal Service to forward all mail addressed to Plaintiff Soderstrom, and/or LIC, to be re-directed to the State Bar. This Order was

denied by the USPS and subsequently Defendant Chavez went to the AIM Mail Center on or about July 10, 2018 and demanded that they withhold the mail despite not having a court order allowing them authority outside of the USPS. Consequently all personal mail addressed to Plaintiff Soderstrom along with Legal Insights mail, has been withheld from Plaintiffs since the Court order and despite repeated requests made to Defendant Ocampo for his personal mail, Ocampo has only mailed one package with approximately 10-pieces of mail, all of which were opened, to Plaintiff Soderstrom in August 2018.

131.    Beginning June 29, 2018, Robert Mayson ("Defendant Mayson"), Administrative Supervisor for the Office of Chief Trial Counsel, by and through Trinidad Ocampo, sent over 150 mailers to both clients and non-clients of Legal Insights, including the following advisory dated July 10, 2-18 to Robert Soto, stating:[7]

> "Re: Law Practice of Randy Soderstrom .... Enclosed please find your file and/or documents. The State Bar has not thoroughly examined the file and/or documents that is/are being returned to you. If you believe that attorney Randy Soderstrom has committed professional misconduct, you may wish to file a complaint with the State Bar by calling the Intake Hotline at (800) 843-9053. If you determine that there has been a theft of settlement funds, you may, in addition, wish to file a criminal complaint with your local police agency or the  District Attorney's  office. [] In addition, if it appears that there has been a theft, you may wish to file an application for reimbursement with the State Bar Client Security Fund  and you can call them at (213) 765-1140 for information on how to file a Client Security Fund application."

[7] These mailers were unknown to Plaintiff until December of 2018.

COMPLAINT FOR RICO DAMAGES AND INJUNCTIVE RELIEF
PAGE **28** OF 85

132.     Defendants Stein, Ocampo, Chavez and Mayson used the telephones of the BAR/OTC to verbally advise numerous LIC clients, prospective clients and the general public beginning June 29, 2018, that  Randy Soderstrom was a licensed California Attorney and Legal Insights was a law firm when Defendants knew that these statements were false.

133.     Defendants Stein, Ocampo, Chavez, Zuniga and Mayson using the telephones of the BAR/OTC, expressly told numerous LIC clients, prospective clients and the general public that they should contact law enforcement and pursue a criminal complaint against Plaintiff Soderstrom based on his status as an attorney and Legal Insights status as a law firm and these individuals were also encouraged to file civil actions against Plaintiff's and these individuals also were misled in the phone conversations to believe they could receive reimbursement from State Bar Client Reimbursement Fund if they submitted a request.

134.     On July 11, 2018 Soderstrom filed a timely motion for reconsideration in the superior court with a hearing date set for September 14, 2018.

135.     On August 15, 2018 Defendants Ocampo, Chavez and Orange County District Attorney Investigator  Brian Sheldon forcibly entered Defendant's storage unit at Public Storage in Laguna Niguel, California, by having a locksmith cut the lock, and in searching the unit damaged several items of a personal nature including artwork, furniture and seized several personal laptops and other personal items. Several boxes, legal items and unknown items were seized.

136.     Since June 29, 2018 until the present Defendants Ocampo and Chavez have adamantly and repeatedly refused to provide Defendants with an itemized list of all items

confiscated from both the Cabot Road Office and the storage unit despite several phone requests and email requests for her to do so

137.     Beginning June 29, 2018 and continuing until the present, Defendant Ocampo continued to threaten and harass Plaintiff Soderstrom on a regular basis by phone, email, letters or a combination of all of the above based on wild accusations concerning password, files and even furniture. Defendants have also repeatedly advised former LIC clients by phone that the BAR/OTC does not have their files and that LIC has their files which is not true as all files were confiscated by Defendants on June 29, 2018.

138.     Beginning August 31, 2018, LIC, at the direction of staff counsel, emailed and mailed all LIC clients an advisement that LIC was no longer able to provide post-conviction assistance and providing information about how to submit claims:

> On June 29, 2018 an injunction was issued by the Orange County Superior Court effectively preventing Legal Insights from assisting any of our clients with post-conviction assistance. While Legal Insights intends to appeal this decision, we must comply with the Court Order. As such, Legal Insights ceased all operations effective June 29, 2018 with the exception of winding down the business as required by federal and state law, returning any client files and working with our insurance carrier concerning any potential client refunds.

> The California State Bar has taken possession of many client files from Legal Insights and they should be contacted directly in order to obtain your file. They can be contacted at 213-765-1000 for more information. Should Legal Insights have possession of a client file, it will be returned to the client without charge.

> Legal Insights carried an insurance policy with CIMA Insurance to whom you may submit a claim. If you wish to submit a claim please email a detailed request along

**COMPLAINT FOR RICO DAMAGES AND INJUNCTIVE RELIEF**
**PAGE 30 OF 85**

with   any attachments that support your claim, to aajones@cimaworld.com , or
call 800-468-4200. You can also submit all refund requests by U.S. Mail to: CIMA,
Attention: Aaron Jones, 2750 Killarney Dr., Ste-202, Woodbridge, VA. 22192.
Please copy all requests for refunds to admin@legalinsights.org , or by U.S. Mail
to: Legal Insights, Attn: Refunds, 8174 South Las Vegas Bl., #109-504, Las Vegas,
NV. 89123.   Legal Insights will cooperate fully with our insurance carrier
concerning all claim requests.

Legal Insights remains operational only for purposes of closing the non-profit down
pursuant to state and federal law, returning client files and cooperating with our
insurance company concerning any refund requests. As of June 29, 2018 we cannot
assist with any Evaluations, pro se pleadings or any other matter that would fall
outside of these two   exceptions. We apologize for any inconvenience.   – Staff
Counsel –

139.    As a result of LIC's inability to provide assistance to its clients, and the Bar's
advisements to LIC's former clients, over 13 claims have so far been submitted for refunds
totaling over $100,000 and the claims keep coming including a claim submitted from Tara Smith
on behalf of Anthony Smith for $9000, which LIC forward to CIMA insurance.

140.    On September 14, 2018, Plaintiff Soderstrom appeared in pro se before the Hon.
Judge Moss, and again requested to be heard and to present exhibits in his defense and the Court
again refused to allow him to defend his case as he was "not an attorney" and could "not
represent a corporation."

141.    Plaintiff Soderstrom again attempted to advise the Court that he was not a "dba",
he was an individual and Legal Insights was a corporations separate from himself where he was
employed as the director. The court refused to entertain Plaintiff's argument.

**COMPLAINT FOR RICO DAMAGES AND INJUNCTIVE RELIEF**
**PAGE 31 OF 85**

142.    The Judge issued a tentative ruling denying the Motion for Reconsideration, and reset the hearing to coincide with the previously scheduled status conference set for October 1, 2018. The judge also instructed Plaintiff Soderstrom not to appear again in court without corporate counsel.

143.    On September 18, 2018, attorney Bart Rinn, representing CIMA Insurance and Lloyds of London, issued a denial of coverage for a claim for Tara Smith and for coverage for Legal Insights attorneys and staff based in part that the California State Bar had determined that Legal Insights was committing UPL.

144.    On September 30, 2018, Plaintiff Soderstrom emailed Ocampo and requested that she provide a detailed list of items seized from both the Cabot Street Office and the storage unit, stop opening his personal mail, and to forward all mail currently held by the BAR/OTC to him forthwith.

145.    On October 1, 2018 Defendant Ocampo responded by email and expressly stated in pertinent part that:

> "With respect to business and personal mail, please review the court order which
> applies to "all mail addressed to Randy Soderstrom, or Legal Insights, Inc." at the
> Alicia Parkway and Cabot Road addresses. As I previously communicated to you,
> my office has a staff of three individuals handling files recovered from all
> assumptions of non-attorneys,  as well as deceased attorneys and attorneys who
> have abandoned their practices, and as such, we do not have the time or the
> resources to provide any such detailed or itemized lists."

146.    On October 1, 2018, Soderstrom did not appear in court as the judge instructed him not to do so, and the judge formally denied the motion for reconsideration.

147.    On October 22, 2018, Defendant Ocampo sent another email stating the following in pertinent part:

> "Pursuant to the courts orders, mail addressed to you or Legal Insights, Inc., at the business addresses identified in the petition can be opened by our office .... "The State Bar of California has no obligation to provide any itemized lists to you .... With respect to your demand for a list of items seized from the Cabot Road office, you were present at the time, which was documented by our investigators Michael Chavez and Enrique Zuniga, and you personally witnessed the recovery of approximately 23 banker boxes of client files and mail."

## H.    Frankel's Recantation and the Bar's Reaction

148.    On or about November 27, 2018, Jean Cha, former Trial Counsel for the State Bar, contacted Plaintiff Soderstrom by phone and advised him that she was in private practice and was representing Defendant Frankel in Matter No. 18-0-10487, in which the State Bar, represented by Defendant Viselman, was considering prosecuting Frankel for allegedly aiding Plaintiff Soderstrom and Legal Insights in the unauthorized practice of law.[8]

149.    Cha advised Plaintiff Soderstrom that Defendant Viselman was currently alleging that Frankel had aided LIC in UPL and they (the BAR/OTC), were requesting that she stipulate to actions that she was adamantly claiming she was not guilty of having committed. The BAR/OTC according to Cha, was enticing Frankel to stipulate to false charges or else face losing

---

[8] Viselman did, in fact, file disciplinary proceedings against Frankel in State Bar Court on December 11, 2018 after Frankel refused to agree to a stipulation that she had aided Plaintiff in the unauthorized practice of law.

**COMPLAINT FOR RICO DAMAGES AND INJUNCTIVE RELIEF**
**PAGE 33 OF 85**

her license in State Bar Court. Cha asked Plaintiff Soderstrom about whether or not Frankel had supervised all work performed by non-attorneys while Defendant Frankel was employed at LIC. Soderstrom replied that she had, in fact, supervised all work performed at all stages and that after the cease and desist order was issued, it was Frankel who, had in fact, implemented even stricter guidelines to ensure compliance with the law.

150.    Cha asked Plaintiff Soderstrom about whether Frankel had, in fact, supervised him and others at Legal Insights, and specifically, the Anthony Smith Case. Soderstrom stated that Frankel had supervised every aspect of the case and in turn Soderstrom provided Cha with copies of all records concerning Defendant Frankel's supervision of the Smith Case and her employment role with LIC.

151.    On December 3, 2018 Jean Cha emailed Plaintiff Soderstrom a declaration dated December 3, 2018 which was signed by Defendant Frankel.

152.    On December 3, 2018, Cha emailed Defendant Viselman a declaration signed by Defendant Frankel on December 3, 2018.

153.    Defendant Frankel's December 3, 2018 Declaration stated:

"From on or about October 21, 2016 to June 3, 2017, I served as a staff counsel to nonprofit organization Legal Insights, Inc. ("LII")."

154.    Defendant Frankel's December 3, 2018 Declaration stated:

"On March 6, 2018, State Bar Investigator Shari Gordon sent me a letter regarding Confidential State Bar Investigation Case Number 18-O-10487, which related to a

complaint brought by Anthony and Tara Smith. On March 18, 2018, I provided responses Ms. Gordon's March 6, 2018 letter."

155.    Defendant Frankel's December 3, 2018 Declaration stated:

"On May 22, 2018, State Bar Investigator Michael Chavez contacted me regarding an investigation of Randy Soderstrom and LII for the alleged unauthorized practice of law. *Mr. Chavez told me that LII was cheating consumers and that it needed to be closed to protect the public.* Over the course of the next few weeks, Mr. Chavez repeatedly contacted me by telephone and email to get me to sign a declaration. *Mr. Chavez assured me that the declaration would not be used against me* in Confidential State Bar Investigation Case Number 18-O-10487. Because an attorney is required to cooperate with State Bar investigations, *I believed at the time that I did not have any choice in the matter.* Therefore, on June 7, 2018, *I signed the declaration **Mr. Chavez drafted**,* which I later learned was used by the California State Bar as evidence in the Orange County Superior Court in support of its motion to assume jurisdiction over LII." (italics and emphasis added)

156.    Defendant Frankel's December 3, 2018 Declaration stated:

"On June 19, 2018, I received a second letter from Ms. Gordon, requesting more information. On July 9, 2018, I provided responses to Ms. Gordon's June 19, 2018 letter.

157.    Defendant Frankel's December 3, 2018 Declaration stated:

"On November 30, 2018, I was provided documents by my counsel, Jean Cha, related to my work as a staff attorney at LII. Reviewing these documents, which were not in my possession and which I had not reviewed at the time I provided information to Ms. Gordon and to Mr. Chavez, has refreshed my recollection regarding events that occurred at the time that I worked as a staff counsel at LII from October 2016 to June 2017."

158.     Defendant Frankel's December 3, 2018 Declaration stated:

> In my June 7, 2018 declaration, *which was drafted by Michael Chavez, I made a number of statements that I believed were accurate at the time that I made them but **now** realize, based upon my review of the documents provided to me, which have refreshed my recollection, **must be updated or clarified*:* (emphasis and italic added)

159.     Defendant Frankel's December 3, 2018 Declaration stated:

> "I was hired by LII in October 2016 to work one (1) day per week." Having reviewed the time sheets and pay statements from LII, *I **now recall*** that the time that I actually worked at LII varied. For example, during December 2016, I worked at LII anywhere from *three to five days per week*. Even when I was not actually in the office, I was available by telephone and email to consult with Mr. Soderstrom, discuss client matters, direct tasks, give instruction, *and supervise Mr. Soderstrom's work*. (italics and emphasis added)

160.     Defendant Frankel's December 3, 2018 Declaration stated:

> "After a few months, I began to ask Soderstrom whether he had yet completed any other PCCE's, including the PCCE for Mr. Anthony Smith. Soderstrom repeatedly told me that he was still gathering information and working on these PCCE's. After I had worked at LII for about six (6) months, I began to become concerned about the status of the PCCE's I had not reviewed." Having reviewed the records provided by my counsel, which refreshed my recollection, *I **now recall*** that *Mr. Soderstrom and I **did** in fact discuss Mr. Smith's case on **multiple occasions**. Mr. Soderstrom **did** provide me with a draft of Mr. Smith's case evaluation, **which I supervised, reviewed, and signed off** on May 5, 2017*. (italics and emphasis added)

**COMPLAINT FOR RICO DAMAGES AND INJUNCTIVE RELIEF**
**PAGE 36 OF 85**

161.    Defendant Frankel's December 3, 2018 Declaration stated:

"In the last two (2) months of my employment, Soderstrom was not sharing any case information with me ...." Having reviewed the records provided by my counsel, which refreshed my recollection, *I now recall* that *Mr. Soderstrom and I did in fact discuss Mr. Smith's case on multiple occasions. Mr. Soderstrom did provide me with a draft of Mr. Smith's case evaluation, which I supervised, reviewed, and signed off on* May 5, 2017. (italics and emphasis added)

162.    Defendant Frankel's December 3, 2018 Declaration stated:

"Furthermore, based on *Whitmore v. Arkansas*, I believed that Mr. Soderstrom represented these clients, not that I represented them directly." Having reviewed the records, I recalled that *I was in fact supervising Mr. Soderstrom's work on Mr. Smith's case. At no time did the need arise for LII to represent Mr. Smith as next friend pursuant to Whitmore because I was supervising the legal work on Mr. Smith's case*, although the contract for services that the Smiths signed states the consumer specifically gives permission to the nonprofit to act as a next friend. (italics and emphasis added)

163.    On December 3, 2018, Jean Cha emailed Defendant Viselman copies of the Declaration, and numerous additional documents including timesheets, work product, etc.

164.    On December 4, 2018, in an email from Defendant Viselman to Jean Cha, Viselman acknowledged receipt of these items.

165.    In an email dated December 4, 2018, Cha advised Soderstrom that the new declaration which had been provided to Defendant Viselman, was met with the following response:

> "Ross Viselman stated that he is not interested in the declaration or attachments in relation to the UPL or Aiding UPL issues." [9]

## I.    Defendant Ocampo's January 8, 2019 Phone Call to Plaintiff

166.    On January 8, 2019, Defendant Ocampo called Plaintiff Soderstrom at 714-728-5109, from phone number 213-765-1486. The conversation lasted 15 minutes and 21 seconds.

167.    During this conversation Plaintiff Soderstrom advised Defendant Ocampo of the new Declaration from Defendant Frankel to which Ocampo "laughed" and stated she would look into it and get back to him. Defendant Ocampo, to date, has never called Plaintiff Soderstrom back or emailed him regarding Defendant Frankel's December 3, 2018 declaration.

168.    During this conversation Defendant Ocampo accused Plaintiff Soderstrom of "cheating Medicare" and threatened to report him. She offered no support for her statement.

169.    During this conversation Defendant Ocampo told Plaintiff Soderstrom that she was aware that he was a "Trump supporter" as she had visited his Facebook page.

_____

[9] Frankel filed her Response to the Bar's disciplinary proceedings against her, on January 28, 2019 where she again claimed that she supervised all work on the Anthony Smith case.

170.    During this conversation Defendant Ocampo told Plaintiff Soderstrom that he was a "white supremacist." Plaintiff told her that this was inappropriate conversation, his political views are his own and he is definitely not a white-supremacist as he is of mixed ethnicity.

171.    During this conversation Defendant Ocampo told Plaintiff Soderstrom that the BAR/OTC would "[n]ever give a grant to someone who supports racism and separating families." When Plaintiff asked where she was getting this from, she replied "your Facebook."

172.    During this conversation Defendant Ocampo directed Plaintiff Soderstrom to go to her Facebook page if he wanted to "become educated on walls". Plaintiff did exactly that and discovered a lengthy article Defendant Ocampo had posted criticizing President Trump for his border policy and criticizing Republicans for supporting his policies.

**J.    Current Events**

173.    On or about January 10, 2019, the BAR/OTC, replaced Trinidad Ocampo as lead counsel in Plaintiff's related Orange County Superior Court Case No. 30-2018-00998872-CU-PT-CJC, with Defendant Abraham Bagari.

174.    On January 11, 2019 , Plaintiff Soderstrom filed a motion to vacate the judgement based on extrinsic fraud, with exhibits in support thereof, at which time a hearing date of January 14, 2019, was scheduled.[10]

_____

[10] A status conference was already scheduled for January 14, 2019.

**COMPLAINT FOR RICO DAMAGES AND INJUNCTIVE RELIEF**
**PAGE 39 OF 85**

175.    At the motion hearing on January 14, 2019, Anthony Radogna appeared as counsel for Legal Insights and Plaintiff Soderstrom appeared in pro se to represent himself.

176.    The case was reassigned to the Honorable Judge James J. DiCesare, who reset the hearing to March 8, 2019, with the option for the Judge to rule from the bench prior to the hearing. Judge DiCesare ordered that any opposition to the motion be filed by the BAR/OTC within 15-days of service of the motion and any reply filed within 5-days thereafter.

177.    On January 15, 2019, Plaintiff Soderstrom received a package addressed from Defendant Bagheri from the BAR/OTC, postmarked January 10, 2019, mailed to his Nevada address. Inside of the package were 8 pieces of mail. These individual pieces of mail had been addressed to "Randy Soderstrom" and had been mailed to his post-office box located at 25602 Alicia Parkway, #323, Laguna Hills, Ca. 92653.

178.    One piece of mail was from the United States Tax Court and was postmarked On October 15, 2018 from the United States Tax Court and was sent to Plaintiff Soderstrom. It included a summons to appear before a federal judge. The letter was specifically addressed to Randy Soderstrom, 25602 Alicia Pkwy., #323, Laguna Hills, Ca. 92653

179.    One piece of mail received was dated July 19, 2018, and was from Lisa Green, Deputy District Attorney for the District Attorney's Office for Kern County, California, sent to Randy Soderstrom, 25602 Alicia Pkwy., #323, Laguna Hills, Ca. 92653, a subpoena which ordered Soderstrom TO APPEAR AS A WITNESS in a criminal case for People v. Norberto Arredondo, on September 27, 2018. It was further stated that should Soderstrom not appear, a warrant for his arrest would be issued.

180.    On January 29, 2019, OTC/Bar filed their opposition to the motion.

181.    In its Opposition, the OTC/Bar did not address the claim that Defendant Mayson had been falsely notifying the public that Soderstrom was an attorney and Legal Insights was a law firm.

182.    In its Opposition, the OTC/Bar did not deny the falsity of Defendant Frankel's June 6, 2018 declaration or her previous statements made to the Bar.

183.    On February 4, 2019 Plaintiff Soderstrom filed his reply in pro se, along with a motion requesting oral testimony, an objection to the OTC/Bar's exhibits and Exhibits in support thereof

184.    On February 5, 2019, LIC, represented by Anthony Radogna, filed its Reply to the Opposition with Exhibits attached thereto.

185.    On February 12, 2019, Plaintiff Soderstrom sent Defendant Bagari an email, which stated:

> In addition, you have been opening my personal mail before providing it to me. These items are clearly personal in nature and should never be opened by your agency for any reason. On February 1, 2019 I received a package from you containing several pieces of opened mail which was personally addressed to me. Included in this mail was a subpoena from the United States Tax Court commanding my presence in the federal court on November 27, 2018. This letter was post-marked October 15, 2018. Your office not only knew that this was personal in nature as of October 2018, but withheld federal legal mail from me; mail which you KNEW was legal and personal, but failed to timely notify of my required presence in federal court. In addition, there are other pieces of personal legal mail which your office failed to inform me of and withheld for months. These will be addressed with specificity in a forthcoming legal action against the OTC. I hereby repeat my request that your office (1) forward ALL personal mail to me

**COMPLAINT FOR RICO DAMAGES AND INJUNCTIVE RELIEF**
**PAGE 41 OF 85**

immediately; (2) do not open my personal mail for any reason; (3) your office provide a list of all personal and Legal Insights mail that was forwarded at any time to a third party, when it was forwarded and to whom it was forwarded.

Your office seized items from my storage unit in August of 2018. Regarding the items you seized from the storage unit, I have repeatedly requested an itemized list of what you seized and I have no list as of to date. Personal items were seized as well as business records and I have NO idea what was seized and you are required under the Fourth Amendment to provide me with an itemized list of WHAT was seized, WHO seized it, WHERE these items are located and WHEN these items were seized. I repeat my request that you do so immediately. In addition, several items of a personal nature were damaged in the storage unit such as computer monitors, paintings, chairs and other items. I am also missing several items of a personal nature. I repeat my request for an itemized list of all items seized at the Cabot Street Office and my storage unit. Also, please advise me to whom I can put in a claim for damages. Furthermore, I want all personal items seized returned to me forthwith at the Las Vegas address.

Regarding client files, all physical files in my possession were either seized by your office when you took over 680+ files from the Cabot Street Office. In addition, I provided an unknown investigator present at the office with a flash drive which contained all electronic client files in Legal Insights possession. Despite repeated requests, your office has failed to identify ANY of the files that were seized, WHO have had their files returned and which files remain. Your office keeps telling former Legal Insights clients that Legal Insights has their files, but you refuse to tell us WHICH files you do not have. Legal Insights has NO files in their possession as your office took everything.

Legal Insights has ceased providing any service to clients as of June 29, 2018. LIC is in the process of winding down corporate matters only and is providing former clients with instructions as to how to put in any claims against LIC so that said claims may be presented to LIC's insurance carrier for further action. LIC carried an D&O/E&O policy for $1,000,000 each claims and $1,000,000 in the aggregate. Please stop telling former clients that we are refusing to provide them refunds. Not true. They must put a claim in as required by law. And stop telling former clients on the phone and in writing that I am a licensed attorney and that Legal Insights was a "law firm." I am not an attorney, never have been and Legal Insights has never been a law firm. Apparently, despite requesting Trinidad to stop this practice, it is continuing as are the false letters being sent by Robert Mayson to the public under your supervision.

COMPLAINT FOR RICO DAMAGES AND INJUNCTIVE RELIEF<br>
PAGE 42 OF 85

I have also mailed (2X), complaints to the State Bar against Trinidad Ocampo and Ross Viselman, neither of which appear to have been received by the Bar. Please follow up and advise where my complaints disappeared to. I will just send them again. I have a right to be heard as any other member of the public. Burying my complaints will achieve nothing.

Lastly, I did not appreciate Trinidad Ocampo using her position with the State Bar to tell me that Legal Insights would never receive grant funding from the Bar because I am allegedly a "Trump Supporter" and a "White Supremacist." While my political beliefs are my own, I can assure you I am not a "white supremacist." Not that I need to explain myself, but apparently this seems to be the driving force behind Trinidad's ad hominem attach upon my character.

186.    No response has ever been received from Defendant Bagheri to date despite several follow up email requests for one, thereby making him complicit in these claims.

187.    On or about February 25, 2019, Plaintiff Soderstrom's personal bank account was frozen based on his failure to respond to a request for a response for unreported taxes from prior tax years. Soderstrom contacted the Franchise Tax Board who advised that they had sent several notices to Randy Soderstrom, 25602 Alicia Pkwy., #323, Laguna Hills, Ca. 92653 in July, August, September and November of 2018 notifying him of the discrepancy. These were never forward to Soderstrom by the BAR/OTC. As a result, Soderstrom had to pay $400.00 plus penalties to unfreeze his account and concede by default for failure to respond to a purported $8000.00 in unpaid taxes.

## VIII.   CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

### Violations of Federal Civil RICO—Unlawful Conduct of an Enterprise, 18 U.S.C. § 1962(c)
### (Defendants Ocampo, Chavez, Zuniga, Viselman, Mayson, Frankel)

188.    Plaintiffs incorporate by reference all the preceding ¶¶ 37-187, *supra*, of this Complaint as if fully set forth herein with specific and detailed references concerning mail fraud, wire fraud and extortion as set forth below and herein.

189.    At all relevant times, RICO Defendants are each "person(s)" within the meaning of 18 U.S.C. § 1962(c) by the acts described in the ¶s below.

### The Enterprises

#### The California State Bar / Office of Chief Trial Counsel (BAR/OTC)

190.    At all relevant times, the California State Bar, Office of Chief Trial Counsel ("BAR/OTC") constituted an "Enterprise" within the meaning of 18 U.S.C. §§ 1964(4) and 1962(c). At all relevant times, the BAR/OTC was engaged in, and/or its activities affected, interstate commerce and/or foreign commerce within the meaning of 18 U.S.C. § 1962(c). At all relevant times, RICO Defendants held a position in the BAR/OTC as well as participated in the operation, management, and directed the affairs of the BAR/OTC. The BAR/OTC, as alleged herein, was not limited to RICO Defendants' predicate acts and has activities extending beyond RICO Defendants' racketeering activity. RICO Defendants have had and do have legitimate governmental business plans outside the pattern of racketeering activity related to the BAR/OTC.

Legal Insights, Inc. (LIC)

191.    At all relevant times, Legal Insights ("LIC") constituted an "Enterprise" within the meaning of 18 U.S.C. §§ 1964(4) and 1962(c). At all relevant times, LIC was engaged in, and/or its activities affected, interstate commerce and/or foreign commerce within the meaning of 18 U.S.C. § 1962(c). At all relevant times, RICO Defendants held a position in LIC as well as participated in the operation, management, and directed the affairs of LIC. LIC, as alleged herein, was not limited to RICO Defendants' predicate acts and has/had activities extending beyond RICO Defendants' racketeering activity. RICO Defendants have had and do have legitimate governmental business plans outside the pattern of racketeering activity related to LIC.

Pattern of Racketeering Activity

192.    RICO Defendants, each of whom are persons associated with, or employed by, the BAR/OTC and LIC, did knowingly, willfully, and unlawfully conduct or participate, directly or indirectly, in the conduct, management, or operation of the racketeering activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5), and 1962(c), through multiple instances of Mail Fraud in violation of 18 U.S.C. § 1341, Wire Fraud in violation of 18 U.S.C. § 1343 and Extortion in violation of 18 U.S.C. § 1951.

Use of the Mails and Wires to Defraud, in violation of 18 U.S.C. §§ 1341 and 1343

193.    RICO Defendants devised or intended to devise a scheme to defraud Plaintiffs of money, property, and the ability to operate in commerce by representing to LIC clients, prospective clients and the public that Plaintiffs were fraudulently misrepresenting themselves.

194.     For the purposes of executing their scheme, RICO Defendants delivered or caused delivery of various documents and things by the U.S. Mails or by private or commercial interstate carriers, or received such therefrom. For the purposes of executing their scheme, RICO Defendants transmitted or caused to be transmitted by means of wire communications in interstate or foreign commerce various writings, signs, and signals.

195.     In furtherance of their scheme, RICO Defendants used the wires and/or U.S. Mails or private or commercial carriers to deliver documents and things to the Court, Plaintiffs, the Enterprises, current clients of LIC, prospective clients of LIC and the general public, including, but not limited to the following:

a.     Transmitting by electronic means and by way of the United States Mail documents to the courts which were known to be false in order to obtain by way of extrinsic fraud, orders from the courts to carry out their scheme to deprive Plaintiffs of money and property;

b.     Transmitting by emails and the U.S. Mail fraudulent and misleading statements falsely claiming that Plaintiff misrepresented himself to the public that he was an attorney when, in fact, he was not.

c.     Transmitting by emails and the U.S. Mail fraudulent and misleading statements falsely claiming that LIC was a law firm when, in fact, LIC has never been a law firm.

d.     Funds transferred both electronically and by Mail from Legal Insights business account to the BAR/OTC at the direction and control of Defendants with the intent that

**COMPLAINT FOR RICO DAMAGES AND INJUNCTIVE RELIEF**
**PAGE 46 OF 85**

those funds be used to promote the carrying on of Defendants' scheme to defraud Plaintiffs of money and property as well as other benefits.

        e.      Illegally assuming control of Plaintiff's mail and phone lines, opening personal mail outside of Plaintiff's presence, holding personal mail for months or never forwarding it at all, taking over personal phone lines and using these lines to convey false information to LIC clients, prospective clients and the general public, exceeding the jurisdiction granted by the court and taking over phone lines out of the State of California, rerouting said phone lines to the BAR/OTC where a recorded message provided false information to LIC clients, prospective clients and the general public.

        f.      Transmitting by emails and the U.S. Mail fraudulent and misleading statements falsely claiming that LIC clients could avail themselves of the BAR/OTC Client Trust Fund when, in fact, they were not legally able to do so.

        g.      Transmitting by emails and the U.S. Mail fraudulent and misleading statements falsely informing the courts, state and federal agencies, LIC clients, prospective LIC clients and the general public that Plaintiff Soderstrom was "dba" as Legal Insights when, in fact, Legal Insights is a registered non-profit corporation and Plaintiff Soderstrom was employed as director.

        h.      Further filing by electronic means, US Mail and private carrier documents and service of court papers containing false and misleading statements intended to further Defendants' scheme to defraud money and property as well as other benefits.

**COMPLAINT FOR RICO DAMAGES AND INJUNCTIVE RELIEF**
**PAGE 47 OF 85**

196.    The RICO Defendants used wire and mail communications in furtherance of their scheme to defraud Plaintiffs, in violation of 18 U.S.C. §§ 1341 and 1343, including but not limited to, the following instances:

a.    On May 22, 2018 Defendant Chavez, at the direction of Defendants Stein and Ocampo, emailed Defendant Frankel and told her that "[L]egal Insights was cheating consumers and that it needed to be closed to protect the public." Chavez then drafted, prepared and emailed Frankel a declaration, at the direction of Defendants Ocampo and Stein, which contained false statements which Defendants Stein, Ocampo, Chavez and Frankel all knew to be false, but which Chavez pressured Frankel to sign by promising that "[t]he declaration would not be used against [her] …" and Frankel signed the false declaration "[B]ecause an attorney is required to cooperate with State Bar investigations." Frankel later stated that, "[I] believed at the time that I did not have any choice in the matter." (See ¶s 82-88, *supra*)

b.    On June 13, 2018 Defendant Ocampo emailed, served by U.S. Mail and private carriers, documents to the Orange County Superior Court, attorney Anthony Radogna, Randy Soderstrom and others. These documents included an Ex Parte Application to Assume Jurisdiction over the Unlawful Law Practice of Randy Soderstrom which contained statements known to be false, and exhibits in support thereof which were known to be false, namely a declaration dated June 7, 2018 signed by attorney Breana Frankel which was drafted by Defendant Chavez at which time Defendants all knew the statements therein were patently false. (See ¶ 89, *supra*)

c.       Beginning June 29, 2018 and continuing to the present, Defendants Stein, Ocampo, Chavez, Zuniga and Mayson emailed and sent by U.S. Mail over 150 letters to LIC clients, prospective LIC clients and the general public, informing these individuals that Randy Soderstrom was a licensed California Attorney and Legal Insights was a law firm when Defendants knew that these statements were false. Furthermore, these individuals were expressly instructed by Defendants in these emails and letters that they should contact law enforcement and pursue a criminal complaint against Plaintiffs based on their status as an attorney and a law firm and these individuals were also encouraged to file civil actions against Plaintiff's and these individuals also were misled in the emails and letters to believe they could receive reimbursement from State Bar Client Reimbursement Fund if they submitted a request. (See ¶ 131, *supra*)

d.       On July 10, 2018, Defendants Stein, Ocampo, Chavez, Zuniga and Mayson sent by U.S. Mail a letter to prospective LIC client Robert Soto, located out-of-the-state of California, which stated that Randy Soderstrom was a licensed California Attorney and Legal Insights was a law firm when Defendants knew that these statements were false. Furthermore, Robert was instructed by Defendants in this letter that he should contact law enforcement and pursue a criminal complaint against Plaintiffs based on their status as an attorney and a law firm and Robert was also encouraged to file civil actions against Plaintiff's and he was further told that he could receive reimbursement from State Bar Client Reimbursement Fund if he submitted a request. (See ¶ 131, *supra*)

e.       Beginning June 29, 2018 and continuing until the present, Defendants Stein, Ocampo, Chavez, Zuniga and Mayson used the telephones of the BAR/OTC to verbally

**COMPLAINT FOR RICO DAMAGES AND INJUNCTIVE RELIEF**
**PAGE 49 OF 85**

advised numerous LIC clients, prospective clients and the general public beginning June 29, 2018, that Randy Soderstrom was a licensed California Attorney and Legal Insights was a law firm when Defendants knew that these statements were false. (See ¶¶ 132-133, *supra*)

f.      Beginning June 29, 2018 and continuing until the present, Defendants using the telephones of the BAR/OTC, expressly told numerous LIC clients, prospective clients and the general public that they should contact law enforcement and pursue a criminal complaint against Plaintiffs based on their status as an attorney and a law firm and these individuals were also encouraged to file civil actions against Plaintiff's and these individuals also were misled in the phone conversations to believe they could receive reimbursement from State Bar Client Reimbursement Fund if they submitted a request. (See ¶ 133, *supra*)

g.      On or about July 10, 2018, Defendants Stein, Ocampo and Chavez sent an email to T-Mobile Legal Department with an order obtained through extrinsic fraud, enabling them to assume control of all personal and business phone lines in the name of Randy Soderstrom, at which time they rerouted said phone lines to the BAR/OTC where Defendant Chavez recorded a message which falsely stated that Soderstrom had an unauthorized law practice and that all callers should leave a message for a callback where they would be given further instructions. These phone lines were registered in Nevada outside of the jurisdiction of the court's jurisdiction in Orange County, California, yet the BAR/OTC exceeded their authority and took over these phone lines anyway. (See ¶ 128, *supra*)

h.      Beginning June 29, 2018, Defendants provided AIM Mail Center, located at 25602 Alivia Parkway, Laguna Hills, 92653, with a copy of the court order issued the same

**COMPLAINT FOR RICO DAMAGES AND INJUNCTIVE RELIEF**
**PAGE 50 OF 85**

day, authorizing the BAR/OTC to have all of Legal Insights and Randy Soderstrom's mail

redirected to the BAR/OTC from the United States Postal Service, which the USPS refused to

do. AIM Mail Center agreed to hold and forward all mail received for Legal Insights and

Soderstrom which began July 9, 2018 and continued until the present. All mail was forward on a

bi-weekly to monthly basis and once received at the BAR/OTC, it was opened and held. Some

mail addressed to Soderstrom was forward to Soderstrom after it was opened and withheld for an

average of 2-3 months. Defendants committed mail fraud as the order granting them authority to

perform these actions was based upon false evidence presented to the court and there was no

evidence presented to the court to authorize the confiscation, opening of and withholding of

Soderstrom's personal mail thereby violating the federal statute for mail fraud. (See ¶ ¶ 130, 144-

145, 147, 177-179, 185-187, *supra*)

           i.     Beginning June 29, 2018, Defendants confiscated all of Plaintiff

Soderstrom's personal mail and LIC business mail that was sent to 25602 Alicia Parkway, #323,

Laguna Hills, Ca. 92653, and 25602 Cabot Road, Ste-212, Laguna Hills, Ca. 92653, opening all

personal and business mail outside of his presence and withholding the mail for up to 2-3 months

before forwarding him his personal mail and, in many cases, the mail is still being withheld. In

no case has the business mail been forwarded nor has a list of what items of mail have been

withheld ever been provided Plaintiffs despite repeated requests made for a list. Plaintiffs have

been unable to communicate with existing clients, respond to prospective clients, process

payments from clients or respond to anyone for that matter. (See ¶ ¶ 130, 144-145, 147, 177-179,

185-187, *supra*)

j.      On September 30, 2018 Plaintiff Soderstrom sent Defendant Ocampo a lengthy email requesting she forward all personal mail being held by the BAR/OTC to Plaintiff immediately, provide Plaintiff a list of mail withheld, a list of all items seized from the Cabot Street Office and the storage unit, and to stop from continuing to open his personal mail outside of his presence and withhold such mail. In emails dated October 22, 2018 and November 1, 2018 Defendant Ocampo responded that she will not provide Plaintiffs with a list of items seized, will continue to open Plaintiff personal mail, and offered excuses why her office will not process list of mail ceased or forward Plaintiff Soderstrom's personal mail in a timely manner.  (See ¶ ¶ 144-145, 147, *supra*)

k.      Beginning June 29, 2018, Defendants committed mail fraud by confiscating all of Plaintiff Soderstrom's personal mail and LIC business mail that was sent to 25602 Cabot Road, Ste-212,Laguna Hills, Ca. 92653, opening all mail outside of his presence and withholding the mail for up to 2-3 months before forwarding him his personal mail and, in many cases, the mail is still being withheld. Plaintiff was unable to pay his mortgage, car payments, utilities, bills or anything for that matter. (See ¶ ¶ 130, 144-145, 147, 177-179, 185-187, *supra*)

l..      On October 15, 2018 the United States Tax Court sent Soderstrom a summons to appear before a federal judge. This letter was addressed to Randy Soderstrom at 25602 Alicia Pkwy., #323, Laguna Hills, Ca. 92653, which contained a summons for Soderstrom to appear before the United States Tax Court on November 26, 2018.  The mail was received by the BAR/OTC who opened it and did not inform Plaintiff of the summons. On or about January 20, 2019, Soderstrom received a package at his current address of 8174 Las Vegas Bl., #109504,

Las Vegas, Nevada, from Defendant Bagheri at the BAR/OTC. Inside the package were 8-pieces of mail that included the Tax Court summons which had been opened by the BAR/OTC. (See ¶ 178, *supra*)

m.    On July 19, 2018, Lisa Green, Deputy District Attorney for the District Attorney's Office for Kern County, California, sent to Randy Soderstrom at 25602 Alicia Pkwy., #323, Laguna Hills, Ca. 92653, a subpoena which ordered Soderstrom TO APPEAR AS A WITNESS in a criminal case for *People v. Norberto Arredondo*, on September 27, 2018. It was further stated that should Soderstrom not appear, a warrant for his arrest would be issued. The BAR/OTC intercepted and took possession of this subpoena but did not advise Plaintiff of its existence or forward it to him until January 20, 2019, when Plaintiff Soderstrom received a package at his current address of 8174 Las Vegas Bl., #109504, Las Vegas, Nevada, from Defendant Bagheri at the BAR/OTC. Inside the package were 8-pieces of mail that included the subpoena which had been opened by the BAR/OTC. (See ¶ 179, *supra*)

n.    Beginning June 29, 2018, numerous pieces of mail addressed from the Internal Revenue Service, State Franchise Tax Board and summons for lawsuits from former Legal Insights clients were either not forwarded to Plaintiff or were forwarded (opened), an average of 2-3 months after they were obtained by the BAR/OTC. It is unknown how many pieces of mail have been received by the BAR/OTC that Plaintiffs are NOT aware of.

o.    Emails, letters sent by U.S. Mail, and statements made on the telephone by Defendants Trinidad Ocampo, Robert Mayson, Michael Chavez and others beginning on June 30, 2018 and continuing up to and including the present falsely informing former Legal Insights

clients that the BAR/OTC did not have their client files and that Plaintiffs had possession of their files and were refusing to turn them over. In fact, on June 30, 2018 Defendants Ocampo, Chavez and Zuniga confiscated over 680+ files from Legal Insights Office located at 25602 Cabot Road, Ste-212, Laguna Hills, Ca. 92653. (See ¶¶ 137, 185, *supra*)

        p.     On December 3, 2018 Defendant Viselman received an email from attorney Jean Cha, who was representing Breana Frankel in the State Bar Proceedings where Viselman was/is prosecuting her, and email which contained an attachment of a new declaration dated December 3, 2018, by Breana Frankel. In this email Frankel recanted her statements in the June 6, 2018 declaration at which time Defendant Viselman replied to Cha in an email in which he stated that he was "no longer interested in Frankel's statements", thereby admitting to a third-party that he had knowledge of new evidence that was favorable to Plaintiffs in the state proceedings, but openly admitting via email that he would take no action to disclose this evidence. (See ¶¶ 148-165, *supra*)

        q.     On February 12, 2019 Plaintiff Soderstrom sent Defendant Bagheri a lengthy email requesting he forward all personal mail being held by the BAR/OTC to Plaintiff immediately, provide Plaintiff a list of mail withheld, a list of all items seized from the Cabot Street Office and the storage unit, and to stop from continuing to open his personal mail outside of his presence and withhold such mail. Defendant has failed to respond. (See ¶ 185, *supra*)

        r.     On or about February 20, 2019, Soderstrom's personal bank account was frozen based on his failure to respond to a request for a response for unreported taxes from prior tax years. Soderstrom contacted the Franchise Tax Board who advised that they had sent several

notices to Randy Soderstrom, 25602 Alicia Pkwy., #323, Laguna Hills, Ca. 92653 in July, August, September and November of 2018 notifying him of the discrepancy. These were never forward to Soderstrom by the BAR/OTC. As a result, Soderstrom had to pay $400.00 plus penalties to unfreeze his account and concede by default for failure to respond to a purported $8000.00 in unpaid taxes. (See ¶ 187, *supra*)

s.    On August 1, 2018 Defendant Ocampo emailed an order to Public Storage's Legal Department advising they were going to make entry into Plaintiff's Storage Unit; an order based on evidence that the Bar knew to be false. Such entry was made on August 15, 2018 with Defendant Chavez who was accompanied by Orange County District Attorney's Office Investigator Brian Sheldon. Despite repeated requests, Defendant Ocampo and later, Defendant Bagheri refuse to provide an itemized list of all items seized from the Unit. (See ¶¶ 135-136, *supra*)

t.    On January 8, 2019 Defendant Ocampo communicated by telephone to Plaintiff Soderstrom that neither he nor Legal Insights would ever be eligible for otherwise publicly available grant funding based on her decision that he was a "Trump Supporter", and a "White Supremacist." (See ¶¶ 8, 166-172, *supra*)

197.    RICO Defendants used the wires and mails in interstate commerce with intent to promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of an unlawful activity.

198.    RICO Defendants racketeering activities were multiple, continuous, and ongoing from about March 8, 2018 and remain ongoing.

199.    RICO Defendants participated in the scheme or artifice knowingly, willfully, and with the specific intent to advance their scheme to deceive or defraud plaintiffs. RICO Defendants knowingly and intentionally prepared documents, including but not limited to, resolutions, court papers, letters, notices, and other documents, and then knowingly and with the intent to deceive Plaintiffs and Plaintiff's clients, prospective clients and the general public, caused those documents to be sent to Plaintiff's or entities that would further RICO Defendants' scheme to defraud.

Extortion and Attempted Extortion in Violation of 18 U.S.C. § 1951

200.    RICO Defendants have, on multiple occasions forced a person or persons by using their official positions with the BAR/OTC to agree to or sign documents which all parties knew to be false at the time they were stipulated to and/or signed. Defendants forced these individuals to execute these documents so that Defendants could further their scheme of falsely presenting to the courts evidence that Plaintiffs were engaged in the unauthorized practice of law and obtaining an order to take action to close the enterprise thereby affecting their interstate commerce in violation of 18 U.S.C. § 1951.

201.    The RICO Defendants used extortion in furtherance of their scheme to defraud Plaintiffs, in violation of 18 U.S.C. § 1951 including but not limited to, the following instances:

a.    Defendants Stein and Chavez knowingly and willfully caused Kavita Sadana to agree to a stipulation dated on or about February 16, 2017 which all parties knew to be false as Sadana felt she had "no choice" in agreeing to the false stipulation as she did not want to

lose her license despite the fact that she had, in fact, provided the supervision for LIC that the stipulation falsely claimed she had not provided. (See ¶¶ 5, 51-59, *supra*)

       b.    On or about March 8, 2017 Defendants Stine and Chavez issued a cease and desist order to Legal Insights threatening to take further legal action against them if they did not cease operations. Defendants knew that the evidence used to support this stipulation were false. Defendants knew that the facts upon which the cease and desist were predicted derived solely from Kavita Sadana's forced concession to the Bar's stipulation that she had aided and abetted LIC in UPL; a stipulation that Defendants knew to be false as they had extorted Sadana to agree to said stipulation or risk losing her license. (See ¶¶ 60-64, *supra*)

       c.    Beginning May 22, 2018, Defendants Stein, Ocampo, and Chavez knowingly and willfully coerced Defendant Frankel to caused Defendant Frankel to ultimately execute a declaration dated June 7, 2018, which all parties knew to be false in furtherance of their conspiracy to close down LIC. Defendant Frankel signed the declaration, which Defendant Chavez drafted, because felt she had "no choice" in signing the false document as she did not want to lose her license despite the fact that she had, in fact, provided the supervision for LIC that she falsely claimed in her June 6th declaration that she had not provided. (See ¶¶ 73-88, 148-165, *supra*)

       d.    Between May 22, 2018 and June 7, 2018, Defendant Chavez knowingly and willfully promised Defendant Frankel that she would not be prosecuted for aiding and abetting Soderstrom or Legal Insights in the unauthorized practice of law, if she agreed to execute a declaration dated June 6, 2018, which all parties knew to be false but Chavez used his

position with the OTC/Bar to extort Frankel' signature under threat of prosecution and loss of her license to practice law. (See ¶¶ 73-88, 148-165, *supra*)

        e.     On December 11, 2018, Defendant Viselman , after having received Defendant Frankel's new declaration dated December 3, 2018, where she admitted to signing the false declaration on June 7, 2018, at the bequest of Defendants Ocampo and Chavez, under duress, initiated legal proceedings against Frankel before the BAR/OTC because she had retracted her June 7th statements and had also refused to agree to a stipulation that she had aided and abetted Plaintiffs in UPL, which Defendant Viselman knew both then and now, Frankel was *not guilty* of having committed. (See ¶¶ 148-165, *supra*)

Summary

202.    Each RICO Defendant has engaged in multiple predicate acts, as described above in ¶¶ 195-201, *supra* and throughout this complaint. The conduct of each RICO Defendant as described above and herein constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

203.    RICO Defendants' violations of federal law as set forth herein, each of which directly and proximately injured Plaintiffs of money and property through mail fraud, wire fraud, false representations, fraud, deceit, extortion and other improper and unlawful means. Therefore, said violations were a part of racketeering activity as defined by 18 U.S.C. §§ 1961(1) and (5).

204.    Plaintiffs were injured in their money and property by reason of RICO Defendants' violation of 18 U.S.C. § 1962(c).

**COMPLAINT FOR RICO DAMAGES AND INJUNCTIVE RELIEF**
**PAGE 58 OF 85**

205.    RICO Defendants' injuries to Plaintiffs were a direct, proximate, and reasonably

foreseeable result of their violations of 18 U.S.C. § 1962. Plaintiffs are the ultimate victims of

RICO Defendants unlawful enterprises. Plaintiffs have been and will continue to be injured in

their money and property in an amount to be determined at trial.

206.    Pursuant to 18 U.S.C. § 1962(c), Plaintiffs are entitled to recover treble damages

plus costs and attorneys' fees from RICO Defendants as well as any other relief authorized by

statute.

### SECOND CLAIM FOR RELIEF

**Violations of Federal Civil RICO—Taking Control of an Enterprise, 18 U.S.C. § 1962(b)
(Defendants Ocampo, Chavez, Zuniga, Viselman, Mayson, Frankel)**

207.    Plaintiffs incorporate by reference all the preceding paragraphs of this Complaint

as if fully set forth herein.

208.    At all relevant times, RICO Defendants are each "person(s)" within the meaning

of 18 U.S.C. §§ 1961(3) and 1962(d).

209.    At all relevant times, the BAR/OTC constituted an "Enterprise" within the

meaning of 18 U.S.C. §§ 1964(4) and 1962(c). At all relevant times, the BAR/OTC was engaged

in, and/or its activities affected, interstate commerce and/or foreign commerce within the

meaning of 18 U.S.C. § 1962(c). At all relevant times hereto, RICO Defendants each held a

position in the BAR/OTC as well as participated in the operation, management, and directed the

affairs of the BAR/OTC. The BAR/OTC, as alleged herein, was not limited to RICO

Defendants' predicate acts and has activities extending beyond RICO Defendants' racketeering

activity. RICO Defendants have had and do have legitimate governmental business plans outside

the pattern of racketeering activity related to the BAR/OTC.

210.    Through a pattern of racketeering activity alleged herein, including without limitation the RICO Defendants' violations of 18 U.S.C. §§ 1341, 1343 and 1951, RICO Defendants took control of the BAR/OTC.

211.    At all relevant times, LIC constituted an "Enterprise" within the meaning of 18 U.S.C. §§ 1964(4) and 1962(c). At all relevant times, LIC was engaged in, and/or its activities affected, interstate commerce and/or foreign commerce within the meaning of 18 U.S.C. § 1962(c). At all relevant times, RICO Defendants held a position in LIC as well as participated in the operation, management, and directed the affairs of LIC. LIC, as alleged herein, was not limited to RICO Defendants' predicate acts and has activities extending beyond RICO Defendants' racketeering activity. RICO Defendants have had and do have legitimate governmental business plans outside the pattern of racketeering activity related to the LIC.

212.    Through a pattern of racketeering activity alleged herein, including without limitation the RICO Defendants' violations of 18 U.S.C. §§ 1341, 1343 and 1951, RICO Defendants took control of LIC.

213.    By controlling BAR/OTC and LIC, Defendants were able to cause these Enterprises to take actions to defraud Plaintiffs of money, property, and benefits of monetary value.

214.    As a direct and proximate result of RICO Defendants' taking control of the BAR/OTC and LIC, in violation of 18 U.S.C. § 1962, Plaintiffs were injured in their monies, property, and benefits of monetary value.

215.   Pursuant to 18 U.S.C. § 1962(c), Plaintiffs are entitled to recover treble damages plus costs and attorneys' fees from RICO Defendants as well as any other relief authorized by statute.

### THIRD CLAIM FOR RELIEF

**Violations of Federal Civil RICO—Conspiracy to Violate RICO, 18 U.S.C. § 1961(1), 18 U.S.C. § 1962(d)**
**(Defendants Ocampo, Chavez, Zuniga, Viselman, Mayson, Frankel)**

216.   Plaintiffs incorporate by reference all the preceding paragraphs of this Complaint as if fully set forth herein.

217.   At all relevant times, RICO Defendants are each "person(s)" within the meaning of 18 U.S.C. §§ 1961(3) and 1962(d).

218.   At all relevant times, the BAR/OTC constituted an "Enterprise" within the meaning of 18 U.S.C. §§ 1964(4) and 1962(c). At all relevant times, the BAR/OTC was engaged in, and/or its activities affected, interstate commerce and/or foreign commerce within the meaning of 18 U.S.C. § 1962(c). At all relevant times hereto, RICO Defendants each held a position in the BAR/OTC as well as participated in the operation, management, and directed the affairs of the BAR/OTC. The BAR/OTC, as alleged herein, was not limited to RICO Defendants' predicate acts and has activities extending beyond RICO Defendants' racketeering activity. RICO Defendants have had and do have legitimate governmental business plans outside the pattern of racketeering activity related to the BAR/OTC.

219.   At all relevant times, LIC constituted an "Enterprise" within the meaning of 18 U.S.C. §§ 1964(4) and 1962(c). At all relevant times, LIC was engaged in, and/or its activities affected, interstate commerce and/or foreign commerce within the meaning of 18 U.S.C. §

1962(c). At all relevant times, RICO Defendants held a position in LIC as well as participated in

the operation, management, and directed the affairs of LIC. LIC, as alleged herein, was not

limited to RICO Defendants' predicate acts and has activities extending beyond RICO

Defendants' racketeering activity. RICO Defendants have had and do have legitimate

governmental business plans outside the pattern of racketeering activity related to the LIC.

220.    RICO Defendants have unlawfully, knowingly and willfully combined, conspired,

confederated and agreed together and with others to violate 18 U.S.C. § 1962(c) as described

above, in violation of 18 U.S.C. § 1962(d).

221.    The conspiracy commenced at least as early as March 6, 2018, and remains

ongoing.

222.    The conspiracy's purpose was to defraud Plaintiffs of money, property, and

benefits of monetary value by fraudulently depriving Plaintiffs of their clients, ability to assist

their existing clients, ability to contract with prospective clients and damage Plaintiff's

reputation in the industry.

223.    Each RICO Defendant committed at least one overt act in furtherance of such

conspiracy. These acts in furtherance of the conspiracy include, but are not limited to, the

specific acts as set forth in ¶¶ 56-59, 65-187, *supra*.

224.    RICO Defendants knew that they were engaged in a conspiracy to commit the

predicate acts, and they knew that the predicate acts were part of such racketeering activity, and

the participation and agreement of each of RICO Defendants was necessary to allow the

commission of this pattern of racketeering activity. RICO Defendants' conduct constitutes a

**COMPLAINT FOR RICO DAMAGES AND INJUNCTIVE RELIEF**
**PAGE 62 OF 85**

conspiracy to violate 18 U.S.C. § 1962(c), in violation of 18 U.S.C. § 1962(d).

225.     Each RICO Defendant knew about and agreed to facilitate the scheme to defraud Plaintiffs of their money, property, and other benefits of monetary value by fraudulently depriving them of their existing clients, ability to assist their existing clients, ability to contract with prospective clients and damage to Plaintiff's reputation in the industry. It was part of the conspiracy that RICO Defendants would commit a pattern of racketeering activity in the conduct of the affairs of the BAR/OTC and LIC, including the acts of racketeering set forth in ¶¶ 56-59, 65-187, *supra*.

226.     As a direct and proximate result of RICO Defendants' conspiracy, the acts of racketeering activity of the Enterprises, the overt acts taken in furtherance of that conspiracy, and violations of 18 U.S.C. § 1962(d), Plaintiffs have been injured in their money and property, in an amount to be determined at trial.

227.     Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover treble damages plus costs and any potential attorneys' fees from Defendants as well as any other relief authorized by statute.

**FOURTH CLAIM FOR RELIEF**
**Extortion**
**Cal. Penal Code §§ 519, 523**
**(Defendants Ocampo, Chavez, Viselman)**

228.     Plaintiff incorporates by reference ¶¶ 56-59, 75-88, 148-165, *supra*.

229.     Defendants have, on multiple occasions forced a person or persons by using their official positions with the BAR/OTC to agree to or sign documents which all parties knew to be

false at the time they were stipulated to and/or signed. Defendants forced these individuals to execute these documents so that Defendants could further their scheme of falsely presenting to the courts evidence that Plaintiffs were engaged in the unauthorized practice of law and obtaining an order to take action to close the enterprise thereby affecting their interstate commerce and ability to maintain existing contractual relationships or pursue prospective economic opportunities.

230.    Defendants used extortion in furtherance of their scheme to defraud Plaintiffs, including but not limited to, the following instances:

a.    Defendants Stein and Chavez knowingly and willfully caused Kavita Sadana to agree to a stipulation dated on or about February 17, 2017, which all parties knew to be false as Sadana felt she had "no choice" in agreeing to the false stipulation as she did not want to lose her license despite the fact that she had, in fact, provided the supervision for LIC that the stipulation falsely claimed she had not provided.

b.    On or about March 8, 2017 Defendants Stine and Chavez issued a cease and desist order to Legal Insights threatening to take further legal action against them if they did not cease operations. Defendants knew that the evidence used to support this stipulation were false. Defendants knew that the facts upon which the cease and desist were predicted derived solely from Kavita Sadana's forced concession to the Bar's stipulation that she had aided and abetted LIC in UPL; a stipulation that Defendants knew to be false as they had extorted Sadana to agree to said stipulation or risk losing her license.

c.      Defendants Stein, Ocampo, and Chavez knowingly and willfully caused

Defendant Frankel to execute a declaration dated June 7, 2018, which all parties knew to be false

as Frankel felt she had "no choice" in signing the false document as she did not want to lose her

license despite the fact that she had, in fact, provided the supervision for LIC that she falsely

claimed in her June 6th declaration that she had not provided.

d.      Defendants Stein, Ocampo, Chavez knowingly and willfully caused

Defendant Frankel to execute a declaration dated June 7, 2018, which all parties knew to be false

as Frankel felt she had "no choice" in signing the false document as she did not want to lose her

license despite the fact that she had, in fact, provided the supervision for LIC that she falsely

claimed in her June 6th declaration that she had not provided.

e.      Defendants Stein, Ocampo, Chavez and Viselman knowingly and willfully

promised Defendant Frankel that she would not be prosecuted for aiding and abetting

Soderstrom or Legal Insights in the unauthorized practice of law, if she agreed to execute a

declaration dated June 6, 2018, which all parties knew to be false. On December 11, 2018

Defendant Viselman , after having received Defendant Frankel's new declaration dated

December 3, 2018, where she admitted to signing the false declaration at the bequest of

Defendants Ocampo and Chavez under duress, Viselman initiated legal proceedings against

Frankel before the BAR/OTC, while knowing her statements for which she was now being

prosecuted for were not only false, but extorted from her by his own office, the BAR/OTC.

Viselman is now prosecuting Frankel because she would not stipulate to acts for which she was

not guilty of committing and acts which Viselman knew Frankel had not committed.

231.    As a proximate result of Defendants wrongful acts, Plaintiffs have been damaged in their business and property.

232.    Plaintiffs are entitled to recover treble damages plus costs and any potential attorneys' fees from Defendants as well as any other relief authorized by statute.

## FIFTH CLAIM FOR RELIEF

### Extrinsic Fraud
### Bennett v. Hibernia Bank, (1956) 47 Cal.2d 540, 558; F.R.C.P. Rule 65
### (Defendants Ocampo, Chavez, Zuniga, Viselman, Frankel)

233.    Plaintiff incorporates by reference ¶¶ 75-116, 148-165, *supra*.

234.    Defendants obtained a court order prohibiting Legal Insights from continuing in business based upon a declaration from Defendant Frankel that was false, and was known to be false by Defendants at the time they drafted and coerced her to sign it.

235.    Had it not been for this false declaration, which the only evidence that was offered to the court to demonstrate that Plaintiffs were misleading the public by claiming all work was done under the supervision of counsel, the court would never have issued the injunction as a matter of fact or law.

236.    Had Plaintiff's know that Defendant Frankel had been coerced and extorted to sign the document, a meritorious defense would have been offered to establish that contrary to the BAR/OTC's position, all work performed at LIC was, in fact, supervised at all times.

237.    Because of Defendants intentional concealment of these favorable and exculpatory facts, Plaintiff was unable to mount a defense in the Superior Court.

238.    Plaintiff, upon discovering the declaration on December 3, 2018, immediately, with all due diligence, prepared and filed a motion to set aside the judgement based on extrinsic fraud in the Superior Court on January 11, 2019 and with due diligence prepare the federal complaint now before the Court.

239.    As a proximate result of Defendants extrinsic fraud upon the court, Plaintiffs have been damaged in their business and property by their inability to maintain existing contractual relationships or pursue any prospective contractual relationships and business relations.

240.    Plaintiffs are entitled to recover treble damages plus costs and any potential attorneys' fees from Defendants as well as any other relief authorized by statute.

## SIXTH CLAIM FOR RELIEF

### Fraudulent Concealment, Intentional Misrepresentation / Falsifying Evidence / Obstruction of Justice
### Cal. Civil Code § 1710(3); Cal. Civil Code § 1710; Cal. Penal Code §§ 132, 134, 141, 148
### (Defendants Ocampo, Chavez, Zuniga, Frankel, Viselman, Mayson)

241.    Plaintiff incorporates by reference ¶¶ 37-187, *supra*.

242.    Defendants obtained a court order prohibiting Legal Insights from continuing in business based upon a declaration from Defendant Frankel that was false, and was known to be false by Defendants at the time they drafted and coerced her to sign it.

243.    Had it not been for this false declaration, which the only evidence that was offered to the court to demonstrate that Plaintiffs were misleading the public by claiming all work was done under the supervision of counsel, the court would never have issued the

**COMPLAINT FOR RICO DAMAGES AND INJUNCTIVE RELIEF**
**PAGE 67 OF 85**

injunction as a matter of fact or law.

244.    Had Plaintiff's know that Defendant Frankel had been coerced and extorted to sign the document, a meritorious defense would have been offered to establish that contrary to the BAR/OTC's position, all work performed at LIC was, in fact, supervised at all times.

245.    Because of Defendants intentional concealment of these favorable and exculpatory facts, Plaintiff was unable to mount a defense in the Superior Court.

246.    Because of Defendants intentional misrepresentation to the court that these false documents were not false, the court ruled adversely against Plaintiff, which was an obstruction of justice on the part of Defendants based on this act of deliberately falsifying evidence.

247.    Plaintiff, upon discovering the declaration on December 3, 2018, immediately, with all due diligence, prepared and filed a motion to set aside the judgement based on extrinsic fraud in the Superior Court on January 11, 2019 and with due diligence prepare the federal complaint now before the Court.

248.    Defendant Viselman upon discovering that the June 7, 2018 declaration was false, failed to disclose this exculpatory evidence to the courts instead, informing the source for this damning evidence that he was "no longer interested."

249.    As a proximate result of Defendants extrinsic fraud upon the court, Plaintiffs have been damaged in their business and property by their inability to maintain existing contractual relationships or pursue any prospective contractual relationships and business relations.

250.    Plaintiffs are entitled to recover treble damages plus costs and any potential attorneys' fees from Defendants as well as any other relief authorized by statute.

## SEVENTH CLAIM FOR RELIEF

### Interference with Existing Contract and Existing Business Relations

### (*Pacific Gas & Electric Co. v. Bear Stearns & Co.* (1990) 50 Cal.3d 1118, 1126)

### (Defendants Ocampo, Chavez, Zuniga, Viselman, Mayson, Frankel)

251.    Plaintiff incorporates by reference ¶¶ 37-187, *supra*.

252.    Beginning in November 2013 until June 29, 2018, Plaintiff LIC had entered into over 108 contracts with clients nationwide for post-conviction assistance.

253.    As of June 29, 2018, Plaintiffs had over 108 clients whom had entered into agreements with LIC totaling several hundred thousand dollars.

254.    Based on Defendants obtaining a court order on June 29, 2018 based on extrinsic fraud, Plaintiffs were prevented from providing any further assistance to their existing clients.

255.    Defendants knew that by obtaining the court order through extrinsic fraud that their actions would disrupt the ability of Plaintiff's to fulfill the terms of the contracts.

256.    As a result, LIC advised their existing clients that they could submit claims for reimbursement to LIC's insurance carrier.

257.    Because of Defendants having obtained an order from the court based on the false claim that LIC was operating without supervising counsel, the insurance provider is denying claims.

258.    Defendants intentional and unjustified acts have actually interfered with and disrupted the agreements and fiduciary relationships with these clients thereby depriving Plaintiffs of their actual and prospective economic advantage and benefits.

259.    As a proximate result of Defendants wrongful acts, Plaintiffs have been damaged in their business and property by their inability to provide the promise services.

260.    Plaintiffs are entitled to recover treble damages plus costs and any potential attorneys' fees from Defendants as well as any other relief authorized by statute.


### EIGHTH CLAIM FOR RELIEF

**Interference with Prospective Contractual and Business Relations**
(***PMC, Inc. v. Saban Entertainment, Inc.*** **(1996) 45 Cal.App.4th 579, 601; ; Diaz v. Gates, 420 F.3d 897, 898-900 (9th Cir. 2005)(en banc))**
**(Defendants Ocampo, Chavez, Zuniga, Viselman, Mayson, Frankel)**

261.    Plaintiff incorporates by reference ¶¶ 37-187, *supra*.

262.    Plaintiffs claims that Defendants intentionally interfered with an economic relationship between them and nearly 700 prospective client that would have resulted in an economic benefit to Plaintiffs.

263.    Plaintiffs and these 700 potential clients were in an economic relationship that probably would have resulted in an economic benefit to Plaintiffs (i.e., contract discussions,

pending contracts, etc.)

264.    Defendants at all times herein knew of these relationships.

265.    Based on Defendants obtaining a court order on June 29, 2018 based on extrinsic fraud, Plaintiffs were prevented from pursuing any prospective contractual relationships and business relations.

266.    As a proximate result of Defendants wrongful acts, Plaintiffs have been damaged in their business and property by their inability to pursue any prospective contractual relationships and business relations.

267.    Plaintiffs are entitled to recover treble damages plus costs and any potential attorneys' fees from Defendants as well as any other relief authorized by statute.

### NINTH CLAIM FOR RELIEF

**Unfair Business Practices**
**California Business & Professions Code §17200, et seq.**
**(Defendants Ocampo, Chavez, Zuniga, Viselman, Mayson, Frankel)**

268.    Plaintiffs incorporate by reference and reallege ¶¶ 37-187, *supra*, of this complaint.

269.    Defendants violated California law concerning unfair business practices by the following:

a.    committing multiple violations of RICO and other crimes to effectively prevent Plaintiffs from maintaining existing contractual relationships or pursuing prospective business relationships;

b.      committing multiple violations of RICO and other crimes to take over Plaintiffs phone lines, mail box, business location and other means to conduct business in an effort to prevent Plaintiffs from maintaining existing contractual relationships or pursuing prospective business relationships;

c.      emailing, mailing and verbally advising the public of information concerning Plaintiffs that was false in an effort to prevent Plaintiffs from maintaining existing contractual relationships or pursuing prospective business relationships;

d.      Defendant Ocampo making it expressly clear that Plaintiffs would be denied otherwise available grant funding based on Plaintiff Soderstrom's alleged political affiliation and his ethnicity

270.    As a proximate result of Defendants actions, Plaintiffs were damaged in their business and property by their inability to maintain existing contractual relationships or pursue any prospective contractual relationships and business relations.

271.    Plaintiffs are entitled to recover damages plus costs and any potential attorneys' fees from Defendants as well as any other relief authorized by statute.

## TENTH CLAIM FOR RELIEF

**Right to Be Secure From Unreasonable Search and Seizures**
**42 U.S.C. §1983 - Fourth Amendment; Art. 1, §13, California Constitution**
**(Defendants Ocampo, Chavez, Zuniga, Frankel)**

272.    Plaintiff incorporates by reference ¶¶ 82-165, 177-179, 185-186, *supra*.

**COMPLAINT FOR RICO DAMAGES AND INJUNCTIVE RELIEF**
**PAGE 72 OF 85**

273.    Defendants violated Plaintiffs' Fourth Amendment rights to be free from unreasonable search and seizure of his property by searching, confiscating and in some cases, destroying Plaintiff's property without a warrant and with a court order that was obtained through extrinsic fraud.

274.    These unlawful actions were done with the specific intent to deprive Plaintiff Soderstrom of his constitutional right to be secure in his property and his right to be free from illegal search and seizure.

275.    Defendants by presenting to the Orange County Superior Court a declaration known to be false in support of their application for an Ex Parte Order, caused the court to issue said Order which authorized Defendants to enter Plaintiff's residence on June 29, 2018 and perform a search therein, which yielded nothing.

276.    Defendants by presenting to the Orange County Superior Court a declaration known to be false in support of their application for an Ex Parte Order, caused the court to issue said Order which authorized Defendants to enter Plaintiff Legal Insights business on June 29, 20189 and perform a search therein, removing over 680 items therein and to date, refusing to provide an accounting of items seized.

277.    Defendants by presenting to the Orange County Superior Court a declaration known to be false in support of their application for an Ex Parte Order, caused the court to issue said Order which authorized Defendants to enter Plaintiff Soderstrom's storage unit on August 15, 2018 and perform a search therein, removing items therein and to date, refusing to provide an accounting of items seized.

278.    Defendants by presenting to the Orange County Superior Court a declaration known to be false in support of their application for an Ex Parte Order, caused the court to issue said Order which authorized Defendants to take over Plaintiff's personal and business post-office box on June 29, 2018, seize all mail therein, open all mail found therein, cause all mail to be redirected to the BAR/OTC, failed to provide personal mail to Plaintiff, and fail to provide a list of any items seized and their current status.

279.    Defendants by presenting to the Orange County Superior Court a declaration known to be false in support of their application for an Ex Parte Order, caused the court to issue said Order which authorized Defendants to enter freeze Plaintiff's personal bank account and LIC's business account on or about July 10, 20189, seize funds therein.

280.    Defendants by presenting to the Orange County Superior Court a declaration known to be false in support of their application for an Ex Parte Order, caused the court to issue said Order which authorized Defendants to redirect all mail addressed to Legal Insights, 25602 Cabot Road, Ste-212, Laguna Hills, Ca. 92653, and seized an unknown number of pieces of U.S. Mail, had such mail redirected to the OTC/Bar, opened all pieces of mail and either did not forward this mail to Soderstrom or did so in an untimely manner by obtaining a court order to do so through extrinsic fraud.

281.    Defendants by presenting to the Orange County Superior Court a declaration known to be false in support of their application for an Ex Parte Order, caused the court to issue said Order which authorized Defendants to take over phone lines belonging to Randy Soderstrom and redirected such phone lines to the OTC/State Bar, by obtaining a court order to do so through

**COMPLAINT FOR RICO DAMAGES AND INJUNCTIVE RELIEF**
**PAGE 74 OF 85**

extrinsic fraud. The redirected phone lines contain a pre-recorded message made by Defendant Chavez which provides the public false information concerning Plaintiffs.

282.    Defendants at all times knew that the basis for their unauthorized entry into Plaintiff's residence, business, postal box, bank account, phone lines and storage unit was based on false evidence and as such they violated his Fourth Amendment right to be free from illegal search and seizure.

283.    Defendants seized over 680 items at the Cabot Street office, an unknown amount of personal and business mail from the Alicia Parkway P.O. Box, an unknown amount of items from the Public Storage unit and have expressly refused to identify a single item seized.

284.    Defendants have informed former clients of Legal Insights that Plaintiffs have possession of their files and refuse to turn them over, yet Defendants refuse to provide Plaintiffs with a list of who these clients are that are inquiring about their files or what files Defendants have in their possession.

285.    As a direct and proximate result of Defendants' violation of Plaintiff's Fourth Amendment rights against illegal search and seizure, all Plaintiffs have been injured in their money and property, in an amount to be determined at trial.

286.    As a direct and proximate result of Defendants' violation of Plaintiff Soderstrom's Fourth Amendment rights against illegal search and seizure he has not only been injured in his money and property, but his personal rights to due process and to be free from illegal search and seizure have been violated, resulting in damages in an amount to be determined at trial.

287.    Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover treble damages

plus costs and any potential attorneys' fees from Defendants as well as any other relief

authorized by statute.


## ELEVENTH CLAIM FOR RELIEF

**Violations of Federal Civil Rights Act—Racial Discrimination-42 U.S.C. §§ 1981, 1983; Fourteenth Amendment**

**(Defendant Ocampo in her official capacity)**


288.    Plaintiffs incorporate by reference and reallege ¶¶ 166-172, *supra*.

289.    Defendant Ocampo by stating to Plaintiff on January 8, 2019 that the BAR/OTC

would never provide grant funding to LIC based on Plaintiff Soderstrom's alleged support for

"President Trump" and her belief that Plaintiff was a "White Supremacist" was a clear violation

of both state and federal law concerning racial, and possibly political, discrimination.

290.    As a proximate result of Defendant Ocampo's actions, Plaintiff Soderstrom had

his civil rights violated as Defendant Ocampo, acting in her official capacity as an attorney for

the BAR/OTC, made a statement regarding Plaintiff's ethnicity as a basis for denying him access

to equal protection of the laws and due process.

291.    Plaintiffs are entitled to recover damages plus costs and any potential attorneys'

fees from Defendants as well as any other relief authorized by statute.

.

**COMPLAINT FOR RICO DAMAGES AND INJUNCTIVE RELIEF**
**PAGE 76 OF 85**

## TWELFTH CLAIM FOR RELIEF

**Race Discrimination and Intentional Race Discrimination in Federal and State Funded Programs**
**Violation of Title VI of the Civil Rights Act of 1964 and 28 C.F.R. §§ 42.101 et seq.; Cal. Government Code § 11135 et seq.; Cal. Business & Professions Code § 125.6; 42 U.S.C. § 1983**
**(Defendant Ocampo in her official capacity)**

292.    Plaintiffs incorporate by reference and reallege ¶¶ 166-172, *supra*, of this complaint.

293.    Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, provides:

[N]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected discrimination under any program or activity receiving federal financial assistance

294.    Federal regulations implementing Title VI prohibit federally funded programs or activities from having a racially discriminatory impact or effect. ( 28 C.F.R. §§ 42.101 *et seq*)

295.    California State law also makes it illegal for governmental agencies to discriminate based on race and, in some cases, political affiliation.

296.    Defendant Ocampo by stating to Plaintiff on January 8, 2019 that the BAR/OTC would never provide grant funding to LIC based on Plaintiff Soderstrom's alleged support for "President Trump" and her belief that Plaintiff was a "White Supremacist" was a clear violation of both state and federal law concerning racial, and possibly political, discrimination.

297.    As a proximate result of Defendant Ocampo's actions, Plaintiff Soderstrom had his civil rights violated and all Plaintiffs have been damaged in their business and property by their inability to maintain existing contractual relationships or pursue any prospective

**COMPLAINT FOR RICO DAMAGES AND INJUNCTIVE RELIEF**
**PAGE 77 OF 85**

contractual relationships and business relations.

298.   Plaintiffs are entitled to recover damages plus costs and any potential attorneys' fees from Defendants as well as any other relief authorized by statute.

.

## THIRTEENTH CLAIM FOR RELIEF

### Respondeat Superior / Vicarious Responsibility
### (*Lisa M. v. Henry Mayo Newhall Memorial Hospital* (1995) 12 Cal.4th 291, 296–297
### (Defendant California State Bar, Office of Chief Trial Counsel; Defendants Lawrence, Sitton, Stine)

299.   Plaintiff incorporates by reference ¶¶ 37-187, *supra*.

300.   Plaintiffs were harmed in their money and property by Defendant California State Bar, Office of Chief Trial Counsel (BAR/OTC) and Defendants Lawrence, Sitton, and Stine's failure to adequately control and supervise the actions of Defendants Ocampo, Viselman, Chavez, Zuniga and Mayson, who were employed directly under them, thereby allowing Defendants to take control of the BAR/OTC which lead to assuming control, albeit illegally of LIC, which resulted in the damages to Plaintiff's money and property.

301.   Plaintiffs were harmed in their money and property by Defendant California State Bar, Office of Chief Trial Counsel (BAR/OTC) and Defendants Lawrence, Sitton, and Stine's allowing Defendants Ocampo, Viselman, Chavez, Zuniga and Mayson, who were employed directly under them, to extort witnesses, coerce false statements, present false evidence to the courts, evidence which was known or reasonably should have been known to be false, which resulted in the damages to Plaintiff's money and property.

302.    At all times Defendants, were acting within the scope of their employment when the harm occurred.

303.    Defendants acts including extrinsic fraud, mail fraud, wire fraud, extortion, falsifying evidence, fraudulent concealment, interference with existing and prospective contractual and business relationships and other acts as described above and herein.

304.    As a proximate result of Defendants Ocampo, Viselman, Chavez, Zuniga and Mayson's actions, Defendants California State Bar, Office of Chief Trial Counsel (BAR/OTC) and Defendants Lawrence, Sitton, and Stine are responsible and liable under the principle of vicarious responsibility/respondeat superior.

305.    As a proximate result of Defendants negligence and acquiescence, Plaintiffs have been damaged in their business and property by their inability to maintain existing contractual relationships or pursue any prospective contractual relationships and business relations.

306.    Defendants California State Bar, Office of Chief Trial Counsel (BAR/OTC) and Defendants Lawrence, Sitton, and Stine are furthermore responsible under the principles of respondent superior and vicarious liability for the statements made by Defendant Ocampo to Plaintiff Soderstrom concerning his alleged political affiliation (support for President Donald Trump), and her assertion that this therefore made him a "White Supremacist", thereby precluding him from applying to the BAR/OTC or their affiliates for any potential grant funding for Legal Insights (LIC); statements which violated Plaintiff Soderstrom's civil rights.

307.    Plaintiffs are entitled to recover treble damages plus costs and any potential attorneys' fees from Defendants as well as any other relief authorized by statute.

**COMPLAINT FOR RICO DAMAGES AND INJUNCTIVE RELIEF**
**PAGE 79 OF 85**

## FOURTEENTH CLAIM FOR RELIEF

### Injunctive Relief

### Civ. Code §§3420, 3422; F.R.C.P., Rule 65

308.    Plaintiff incorporates by reference ¶s XXX-XXX, *supra*.

309.    Plaintiffs seek a preliminary injunction enjoining Defendants from executing any further actions against Plaintiffs as described above and herein, including, but not limited to, the following:

a.    The immediate release of all personal mail in the possession of the BAR/OTC and immediate forwarding to Plaintiff of all personal mail;

b.    The immediate release of all LIC mail in the possession of the BAR/OTC and the forwarding of all business mail to an attorney who will be designated as supervising counsel for LIC;

c.    The immediate release of all holds on Plaintiffs mail box located at 25602 Alivia Parkway, #323, Laguna Hills, Ca. 92653 and all mail being held concerning LIC's former office located at 25602 Cabot Road, Ste-212, Laguna Hills, Ca. 92653;

d.    The immediate release of all holds on Plaintiff Soderstrom's personal bank accounts;

e.    The immediate release of all holds on LIC's bank accounts and control turned over to an attorney designated to act as supervising counsel for LIC;

f.    cease and desist from entering Plaintiff Soderstrom's residence and/or

**COMPLAINT FOR RICO DAMAGES AND INJUNCTIVE RELIEF**
**PAGE 80 OF 85**

harassing his family members;

g.    immediate release and return of all seized phone lines in the name of Randy Soderstrom;

h.    an accounting and itemized list of all 680+ files and items seized from the Cabot Street Office and the Public Storage Unit and a list of the current location and status of all said items seized;

i.    the immediate return of all personal property seized from the Cabot Street Office and the Public Storage Unit;

j.    the immediate return to an attorney designated as supervising counsel for LIC, all items addressed to and/or considered property of LIC;

k.    Defendants immediate cessation of referring in all legal pleadings, proceedings and representing to the public that Plaintiff is "dba" as Legal Insights, when, in fact, he is a person and Legal Insights is a corporation;

l.    immediate notification to all 150+ parties who were falsely advised by BAR/OTC that Plaintiff Soderstrom is an attorney and Plaintiff Legal Insights is a law firm, that such statements were incorrect and the BAR/OTC made these statements in error;

m.    immediate cessation of informing former LIC clients, prospective clients and the general public that Plaintiff is an attorney, Legal Insights is a law firm and that former clients can apply to the State Bar Client Trust Fund;

l.    an immediate order by the Court allowing Legal Insights to continue

providing post-conviction assistance to its existing clients providing that all such assistance is done so under the supervision of licensed counsel;

m.      an immediate order by the Court allowing Legal Insights to continue pursuing all prospective business/clients for Legal Insights providing that all such business pursuits are done under the supervision of licensed counsel;

310.    Plaintiffs request this preliminary injunction until and at such time that the Court can decide the merits of Plaintiffs claims and if successful, a permanent order can be sought.

311.    Plaintiff maintain that this preliminary injunction should issue as there is a strong likelihood that Plaintiffs claims will succeed on the merits.

312.    Plaintiffs maintain that this preliminary injunction should issue as it is likely that failure to issue said injunction will result in irreparable harm to Plaintiff's money, property, current and prospective business relations and Plaintiff Soderstrom's civil and due process rights.

313.    Plaintiffs maintain that this preliminary injunction should issue as the balance of equities tip highly in Plaintiffs favor in that it is in the public interest that commerce not be adversely affected by the actions of those who, as here, have committed numerous violations of RICO and other laws in order to deny public corporations their ability to maintain business relationships and to pursue prospective business relationships.

314.    Plaintiff Soderstrom further maintains that this preliminary injunction should issue as the balance of equities tip highly in Plaintiffs favor in that it is in the public interest that representatives of quasi-governmental agencies, such as the BAR/OTC, who themselves receive

federal and state funding, not be allowed to direct the withholding of grant funds from otherwise eligible non-profit organizations, based on racial or political status of the employees of such organizations, thereby violating federal laws regulating commerce, the ability for non-profit organizations to help the public and the violation of individuals so employed by such organizations to be discriminated against based on their race and/or their political orientation.

315.    Plaintiff therefore argues that issuing this injunction is in the public interest for the reasons as stated above and herein.

///

///

///

///

///

///

///

///

///

///

///

**COMPLAINT FOR RICO DAMAGES AND INJUNCTIVE RELIEF**
**PAGE 83 OF 85**

## IX.    **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand a jury trial and pray that judgement be entered against Defendants as follows:

1.    For damages against the Defendants, and each of them, jointly and severally, in an as yet undetermined amount, the amount duly trebled in accordance with 18 U.S.C. § 1964(c);

2.    For punitive damages, in an amount to be determined at trial, against the Defendants, and each of them, jointly and severally;

3.    For a temporary restraining order, preliminary and permanent injunction, enjoining and restraining Defendants from engaging in the policies, practices and conduct complained of herein;

4..    For the costs of investigation and litigation reasonably incurred, as well as any attorney fees should counsel be retained or appointed, in accordance with 18 U.S.C. § 1964(c); and

5.    For such other damages including future damages, amended damages, relief and pre- and post judgement interest as the Court may deem just and proper to award Plaintiffs complete relief.

6.    Plaintiff submits these facts based on direct knowledge and based on information and belief.

Date: _____3/4_____, 2019    _____

Randy Soderstrom-Plaintiff in pro se

**COMPLAINT FOR RICO DAMAGES AND INJUNCTIVE RELIEF**
**PAGE 84 OF 85**

1

## X.    **DECLARATION OF SERVICE**

2

3    On the date as indicated below, I, Carlos Rodriguez, a resident of Orange County,

California, personally deposited into the U.S. Mail. Postage thereupon fully pre-paid (Priority

4    Mail), copies of **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR**

5    **VIOLATIONS OF THE RACKETEER INFLUENCED AND CORRUPT**

6    **ORGANIZATIONS ACT; CIVIL RIGHTS ACT AND SUPPLEMENTAL CLAIMS,**

7    addressed to:

8    MICHAEL CHAVEZ,, Investigator                    ELIZABETH STINE, Supervising Attorney
     THE STATE BAR OF CALIFORNA, OTC                 THE STATE BAR OF CALIFORNA, OTC
9    845 South Figueroa Street                        845 South Figueroa Street
     Los Angeles, Ca. 90017-2515                      Los Angeles, Ca. 90017-2515
10

11

12   MELANIE LAWRENCE, Chief Trial Counsel            ROSS VISELMAN, Senior Spvg. Attorney
     THE STATE BAR OF CALIFORNA, OTC                 THE STATE BAR/OTC
13   845 South Figueroa Street                        845 S. Figueroa St.
     Los Angeles, Ca. 90017-2515                      Los Angeles, Ca. 90017-2515
14

15   ROBERT MAYSON, Administrative Spvr.              BREANA FRANKEL, attorney
     THE STATE BAR OF CALIFORNA, OTC                 The Law Offices of Breana Frankel
16   845 South Figueroa Street                        28202 Cabot Rd..
     Los Angeles, Ca. 90017-2515                      Laguna Niguel, Ca. 92677-1249
17

18   RIZMARI SITTON, Assistant Chief Trial Counsel    ENRIQUE ZUNIGA, Investigator
     THE STATE BAR OF CALIFORNA, OTC                 THE STATE BAR OF CA. OTC
19   845 South Figueroa Street                        845 South Figueroa St.
     Los Angeles, Ca. 90017-2515                      Los Angeles, Ca. 90017-2515
20

21   THE STATE BAR OF CALIFORNA, Office of Chief Trial Counsel
     Attn: Legal Dept.
22   845 South Figueroa Street
     Los Angeles, Ca. 90017-2515

23   The facts as stated above are true and correct subject to the penalty for perjury.

24

25   Date: _____March 4_____, 2019          _____

26                                          Carlos Rodriguez-Declarant

27

28            **COMPLAINT FOR RICO DAMAGES AND INJUNCTIVE RELIEF**
                              **PAGE 85 OF 85**